NOVAK, APPELLANT, *v.* PERK, MAYOR ET AL., APPELLEES.
CARNEY, DIR., APPELLEE, *v.*
CITY OF CLEVELAND ET AL., APPELLANTS.

(Nos. 79-1467 and 79-1490—Decided December 3, 1980.)

*Messrs. Summers & Potts* and *Mr. William L. Summers,* for appellant in case No. 79-1467.

*Messrs. Bartunek, Garofoli & Hill, Mr. Joseph W. Bartunek* and *Ms. Patricia S. Kleri,* for appellants in case No. 79-1490.

*Mr. Thomas E. Wagner,* director of law, *Ms. Marilyn G. Zack* and *Mr. James Young,* for appellees in case Nos. 79-1467 and 79-1490.

*Per Curiam.* Although Section 24 of the city's charter places the legislative power in the city council, that power is limited by Section 118 of the charter, which states:

"The Fire Force shall consist of a Chief and such other of-

ficers, firemen and employees as may be provided by ordinance or resolution of Council. In case of riot, conflagration, or like emergency the Mayor may appoint additional firemen and officers for temporary service who need not be in the classified service. The Fire Chief shall have exclusive control of the stationing and transfer of all firemen and other officers and employees constituting the Fire Force under such rules and regulations as may be established by the Mayor or by the director of the department to which the said Fire Chief may be immediately responsible."

Section 118 clearly gives the fire chief exclusive authority over individual assignments of fire department personnel. It also states that this control is subject to such rules and regulations as may be established by the mayor or the director of the department to which the fire chief is immediately responsible (*i.e.*, the safety director).

In so providing, the framers of the charter signified an intention to place exclusive, overall control of the city's fire protection forces in the mayor or the safety director. Such control necessarily includes the allocation of fire companies throughout the city. By placing exclusive control of allocation in the executive branch, the framers intended to limit the legislative power given the council, precluding council from enacting an ordinance regarding fire company allocation.

Appellants contend, however, that if Section 118 is construed to place exclusive control of fire company allocation in the executive branch, it is invalid pursuant to Section 3, Article XVIII of the Ohio Constitution, because it conflicts with R. C. 737.21, a general law of this state.

Section 7, Article XVIII of the Ohio Constitution, states:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

Section 3, Article XVIII, provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

This court has made it clear that in Section 3 of Article

XVIII the words "as are not in conflict with general laws" do not modify the words "powers of local self-government." *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, paragraph four of the syllabus. Thus, municipal exercises of authority which involve powers of local self-government ordinarily prevail over general state laws.

R. C. 737.21 states:

"The legislative authority of a municipal corporation may establish all necessary regulations to guard against the occurrence of fires, protect the property and lives of its citizens against damage and accidents resulting therefrom, and for such purpose may establish and maintain a fire department, provide for the establishment and organization of fire engine and hose companies and rescue units, establish the hours of labor of the members of its fire department who shall not be required to be on duty continuously more than six days in every seven, and provide such bylaws and regulations for the government of such companies and their members as is necessary and proper."

The relevant portion of this statute does not prescribe an allocation formula; it merely authorizes the legislative branch of a municipal corporation to provide for fire protection. Section 118 of the charter differs from the statute only insofar as it places the power to allocate fire companies in the executive branch without action by the legislative authority. In any event, Section 118 involves the exercise of a power of local self-government.

In *Fitzgerald* v. *Cleveland* (1913), 88 Ohio St. 338, this court held that a city charter could provide for a method of nominating candidates to elective offices other than those prescribed by the General Assembly. The court held that the method of nominating candidates was a function of government, stating, at page 344, that "it is sufficient to say here that the powers [of local self-government] referred to are clearly such as involve the exercise of the *functions* of government * * *." (Emphasis added.)

The placement of control over the fire forces in one branch of government as opposed to another involves the exercise of a function of government. It is analogous to the modification of the method used to nominate elected officials.

The fact that fire protection is involved does not preclude our holding that Section 118 is an exercise of a power of local self-government. In *State, ex rel. Canada,* v. *Phillips, supra,* this court held that appointments of officers in police departments were matters of local self-government, stating, at page 200, that "where a municipality establishes and operates a police department, it may do so as an exercise of the powers of local self-government conferred upon it by Sections 3 and 7 of Article XVIII of the Constitution." This holding applies with equal weight to fire departments.

For the reason that (1) Section 118 places exclusive control of fire force allocation in the mayor or the safety director and (2) that such placement of control is an exercise of a power of local self-government, we hold that the Cleveland city council did not have the power to enact Ordinance No. 273-76.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

DOWD, J., dissenting. The basic premise of the majority opinion is that the "exclusive control of the stationing and transfer of all firemen" granted to the fire chief under the provisions of Section 118 of the Cleveland charter authorizes the closing of fire stations in Cleveland by the executive branch of the government without the concurrence of the legislative branch, *i.e.,* city council.[1] I do not agree.

_____

[1] The legislative powers of the city of Cleveland are vested in the city council by Section 24 of the city charter. Section 77 of the charter grants the authority to the council to establish departments and to "prescribe, combine, distribute or abolish the functions and duties of departments***."

Section 79 of the charter provides that "[t]he work of the several departments shall be distributed among such divisions thereof as are established by this Charter or as may be established by the Council by ordinance with the concurrence of the Board of Control.***"

Section 115 of the charter mandates that the city maintain a police force and fire force.

It is well-settled for noncharter municipalities operating fire departments under state law, *i.e.*, R. C. 737.21[2] and 737.09,[3] that the task of establishing the structure of the fire department belongs to the legislative branch of the government, while the authority to station and transfer the personnel of the fire department belongs to the executive branch in the person of the fire chief and, ultimately, the safety director.

In my view, Section 118 of the Cleveland charter, read *in pari materia* with Sections 24, 77, 79 and 115 of the Cleveland charter, mandates the same division of governmental responsibility for Cleveland as do R. C. 737.21 and 737.09 for non-chartered municipalities.

The legislative task of establishing the structure of a fire department, given the department's basic duty to fight and prevent fires, includes determination of the location of the fire stations where the fire fighting personnel and equipment are to be housed. This court's decision that the "exclusive control over the stationing" of the fire fighting personnel carries with it the unilateral power of the executive branch to disrupt the structure of the fire department as fixed by the legislative branch improperly breaches the separation of powers principle evident in the Cleveland charter.

While the wisdom of Cleveland's city council in enacting Ordinance No. 273-76, given the city's precarious financial condition, may be suspect, in my opinion the ordinance is valid and enforceable. I would reverse the Court of Appeals and reinstate the judgment of the Court of Common Pleas in both actions.

---

[2] R. C. 737.21 states:

"The legislative authority of a municipal corporation may establish all necessary regulations to guard against the occurrence of fires, protect the property and lives of its citizens against damage and accidents resulting therefrom, and for such purpose may establish and maintain a fire department, provide for the establishment and organization of fire engine and hose companies and rescue units, establish the hours of labor of the members of its fire department who shall not be required to be on duty continuously more than six days in every seven, and provide such bylaws and regulations for the government of such companies and their members as is necessary and proper."

[3] R. C. 737.09 states:

"The chief of the fire department shall have exclusive control of the stationing and transferring of all firemen and other officers and employees in the department under such general rules and regulations as the director of public safety prescribes."