OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Local 330, Akron Firefighters Association, AFL-CIO, et al.
Appellants, v. Romanoski et al., Appellees.
[Cite as Local 330, Akron Firefighters Assn., AFL-CIO v.
Romanoski (1994),    Ohio St.3d     .]
Municipal corporations -- Chief of Akron Division of Fire
     details employee classified as a firefighter/medic to
     serve as "acting lieutenant" and an employee classified as
     a lieutenant to serve as an "acting captain" without the
     approval of the civil service commission -- Actions
     violative of Section 108 of city charter that mandates
     procedure in filling positions in the classified services.
     (No. 92-2203 -- Submitted December 15, 1993 -- Decided
April 6, 1994.)
     Appeal from the Court of Appeals for Summit County,
No. 15514.
     Appellee city of Akron, Department of Public Safety,
Division of Fire ("Akron Fire Division") is composed of the
following classes of officers and firefighters in order of
rank:  (1) chief, (2) deputy chiefs, (3) district chiefs, (4)
captains, (5) lieutenants, and (6) firefighter/medics.
     In 1990, the Akron Fire Division suffered a shortage of
manpower in the ranks of lieutenant and captain.  In May and
June 1990, appellee Fire Chief George Romanoski devised and
implemented a program to fill the vacancies in the positions of
lieutenants and captains until permanent officers could be
appointed from promotional eligible lists which were in the
process of being established by appellee Akron Civil Service
Commission.1  Under this program, certain individuals
classified as firefighter/medic were selected and trained to
serve as "acting lieutenant" and certain individuals classified
as lieutenant were selected and trained to serve as "acting
captain."2
     On August 6, 1990, appellants, Local 330, Akron
Firefighters Association and several of its members, filed a
complaint for declaratory judgment and injunctive relief in the
Summit County Court of Common Pleas.  The complaint alleged
that Chief Romanoski, "without authority and in violation of
the Charter of the City of Akron *** has attempted to create

additional ranks in the Akron Fire Department"; "is appointing persons *** to positions *** normally filled by promotion of those individuals certified as as [sic] qualified for such positions by the Akron Civil Service Commission"; and, in taking such action, is "exceeding the authority of his position [and] is assuming the authority of the City Council ***."

On October 3, 1991, following the denial of cross-motions for summary judgment, the case proceeded to trial by the court. On December 19, 1991, the trial court entered judgment enjoining the "practice of appointing persons to the Chief's self-created positions of Acting Lieutenant and Acting Captain without competitive examination and without appointing promoted officers from [the] appropriate eligibility list or by way of provisional appointments as are authorized by the Charter of Akron." In so doing, the trial court made the following relevant findings of fact:

"7. Acting officers, in effect, held the same rank as those in classifications created by City Council and promoted by the Civil Service Commission. However, they were in fact designated and recorded as "Acting" with respect to their respective titles of Lieutenant and Captain.

"8. The assignments as Acting Lieutenants or Acting Captains were not for sudden unexpected emergency situations. The designation and assignment of Acting Lieutenants and Acting Captains became a long standing procedure existing for more than one year. Although the procedure is seldom used since the appointment of additional Lieutenants and Captains in the fall of 1990, the procedure nevertheless exists and is used today very rarely.

"9. The Acting Lieutenants perform approximately the same duties as a firefighter, with the additional responsibility of decision making and supervision of others. The acting officers, however, are not assigned all of the administrative duties of the promoted officers' positions."

The court of appeals reversed the judgment of the trial court and remanded the cause, finding, as a matter of law, that "there were no promotions or appointments [made] according to Civil Service procedures" and that "[u]nder the Akron City Charter and the Akron Fire Department Rules, [Chief] Romanoski had the authority to temporarily assign personnel to fill positions vacant by absence or disability."

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Thompson, Hine & Flory, William C. Moul and Bonnie I. O'Neil, for appellants.

Max Rothal, Director of Law, Elaine B. Davidson and Patricia Ambrose Rubright, Assistant Directors of Law, for appellees.

Alice Robie Resnick, J. It is not the function of this court to assess the wisdom of the program established by Fire Chief Romanoski in the summer of 1990, or to assay the propriety of a civil service system. Our sole task in this case is to determine whether the Akron City Charter authorizes a chief of the fire division to detail (temporarily assign) various classified employees to acting positions. Specifically

in this case, the question is whether the Chief of the Akron Fire Division may detail an employee classified as a firefighter/medic to serve as an "acting lieutenant," and an employee classified as a lieutenant to serve as an "acting captain," without the approval of the civil service commission.

Section 70 of the city's charter provides as follows:

"The fire force shall consist of a Chief and such officers and employees as may be provided for by Council. The Chief of the Division of Fire shall be in immediate charge of the fire force and shall have control of the stationing and transfer of all firemen and other employees constituting said fire force, under such rules and regulations as the Mayor may prescribe. In case of riot, conflagration or other like emergency, the Mayor, or in his absence the Chief of the fire force, may appoint, for the period of the emergency only additional firemen who need not be in the classified service."3

In Novak v. Perk (1980), 64 Ohio St.2d 43, 18 O.O.3d 251, 431 N.E.2d 784, this court considered the import of a similar provision under the Charter of the city of Cleveland. We found that "the framers of the charter signified an intention to place exclusive, overall control of the city's fire protection forces in the mayor" and to give "the fire chief exclusive authority over individual assignments of fire department personnel." Id. at 45, 18 O.O.3d at 252, 413 N.E.2d at 785.

In Harsney v. Allen (1953), 160 Ohio St. 36, 50 O.O. 492, 113 N.E.2d 86, we addressed the issue of whether the Chief of Police for the city of Youngstown may detail a police radio operator to the duties and functions of a patrolman, without the consent of the civil service commission, also under a similar provision of that city's charter. We held that where the employee's "status and emoluments" are not impaired, the assignment is a proper exercise of the chief's "exclusive control of the stationing and transfer of all *** employees ***." Id. at syllabus. In so holding, we noted that the classification of police radio operator "is made in the salary ordinance of the city of Youngstown, which provides, inter alia, for four police radio operators and 176 patrolmen, each with a salary of $3,540 per year." Id. at 40, 50 O.O. at 493, 113 N.E.2d at 88.

Harsney involved a lateral (intra-classification) assignment, i.e., an assignment from one position to another within the same civil service classification, albeit involving different duties. The present case involves a promotional (inter-classification) assignment, i.e., an assignment to a higher classified rank, albeit minus some of the attendant administrative duties of that rank.

In order to determine whether the Chief may make such a promotional assignment without approval from the civil service commission, we must consider the parameters of the authority given to the civil service commission.

A municipality has the authority to exercise all powers of local self-government and may allocate authority between its fire chief and civil service commission over the utilization and employment of its fire protection forces. Neither may usurp the authority given to the other. See, generally, Novak, supra, 64 Ohio St.2d at 45, 18 O.O.3d at 252, 413 N.E.2d at 785; Harsney, supra; State ex rel. Lentz v. Edwards (1914), 90

Ohio St. 305, 107 N.E. 768; Fitzgerald v. Cleveland (1913), 88 Ohio St. 338, 103 N.E. 512.

Section 106 of the charter provides, in relevant part, as follows:

"The Personnel Director, under the direction of the [Civil Service] Commission *** shall prepare and recommend rules and regulations for the administration of the civil service provisions of the Charter, which shall become effective after approval by the Commission ***.

"It is hereby provided and the rules and regulations shall provide:

"(1) For the classification and standardization of all positions in the classified service. The classification into groups and subdivisions shall be based upon and graded according to their duties and responsibilities, and so arranged as to permit the filling of the higher grades, so far as practicable through promotion. All salaries shall be uniform for like service in each grade, as the same shall be standardized and classified by the Civil Service Commission. The Commission shall have the sole power to create new classification.

"(2) For open competitive examinations to be given under the direction of the Personnel Director to test the relative fitness of applicants for such positions.

"***

"(4) For the creation by Personnel Director of eligible lists upon which shall be entered the names of successful candidates in the order of their standing in such examination or test.

"(5) For the rejection by the Personnel Director, by authority of the Commission, of candidates or eligibles who failed to meet reasonable qualification requirements ***.

"***

"(6) For the certification to the appointing authority by the Personnel Director from the appropriate eligible list to fill vacancies in the classified service of the persons with the three highest scores on such list, or of the person or persons on such list when the same contains less than three scores.

"(7) For promotion based on competitive examinations and records of efficiency and seniority. Lists shall be created and promotions made in the same manner as in original appointments. Any advancement from one job classification to another for which the maximum rate of pay is higher shall constitute promotion. Whenever practicable, vacancies shall be filled by promotion."

Section 108 provides, in relevant part, that:

"When a position in the classified service is to be filled, the appointing authority shall notify the Personnel Director of the fact and the Personnel Director shall certify to such authority the names and addresses to the three candidates standing highest on the appropriate eligible list for the position. *** The appointing authority shall immediately appoint one of the persons certified to such position.

"*** When no eligible list for such position exists or when the eligible list has become exhausted and until a new

list can be created, the appointing authority may make a provisional appointment for a period of not to exceed ninety days upon authorization by the Personnel Director. ***  In the event that more than one position in the same classification is to be filled, the appointing authority shall fill one position before the Personnel Director shall certify any additional names.

"Temporary appointments may be made for periods not to exceed two hundred and seventy days, and seasonal appointments may be made for the duration of the specified season.  Wherever practicable, temporary or seasonal appointments shall be made from eligible lists in the manner provided herein."4

Section 106 clearly gives the civil service commission sole authority to establish and standardize all positions in the classified civil service and to certify persons as eligible for appointment to each classified position.  Section 108 mandates the following procedure whenever a position in the classified services is to be filled:  (1) the appointing authority notifies the Personnel Director that a position is to be filled; (2) the Personnel Director certifies to the appointing authority the names of persons on the appropriate eligible list established for that position through examination; and (3) the appointing authority makes a permanent or temporary appointment from among those names of persons certified by the Personnel Director as eligible for appointment to the vacant position.  In the absence of an appropriate eligible list for the position, a vacancy in the classified civil service may be filled only by provisional appointment upon authorization by the Personnel Director.

Since Sections 106 and 108 are in pari materia, they must be construed with reference to each other.  Read together, they provide that before a person may be permitted to serve in any classified civil service position, he or she must be appointed to the position after the civil service commission makes a determination of eligibility.  These sections evince dual purposes for ensuring commission involvement in classified employment: (1) to promote a fair competition for civil service positions, and (2) to ensure that only qualified individuals serve in those positions.

Appellees would have this court hold that the civil service provisions of the charter are inapplicable in this case.  They argue that the Chief made only "assignments," not "appointments," and that no vacancies were "filled," since the positions remained open for later permanent appointments.  Appellees misconstrue the import of Sections 106 and 108.  Such a holding as appellees suggest could create a purely semantical loophole under which the Chief may circumvent the required level of commission involvement by selecting and training lower ranked division personnel, on his own initiative, to serve or "act" in vacant classified positions for which appointments are required.  Semantics aside, the Chief did not follow the procedure for making appointments mandated by Section 108.  Rather, he usurped the exclusive authority given to the civil service commission under the charter by making his own determination of a member's eligibility to serve in a higher classified rank.  If we were to allow this circumvention, the separate powers reserved by charter to the civil service

commission would effectively be fused with those of the Chief.

We hold that the Chief of the Fire Division may not detail a member of his division to serve in a higher classified rank. He may, under certain provisions set forth in the charter and civil service rules promulgated thereunder, provisionally appoint a member of his division to serve in a higher classified rank, upon authorization by the Personnel Director.

In light of the foregoing, the judgment of the court of appeals is reversed, and the injunction issued by the trial court is reinstated.

Judgment reversed.

Moyer, C.J., A.W. Sweeney, Douglas, F.E. Sweeney and Pfeifer, JJ., concur.

Wright, J., concur spearately.

FOOTNOTES

1    In February 1988, Chief Romanoski had submitted a requisition to the Personnel Director of the civil service commission for certification of names from its eligible list to fill vacant lieutenant positions.  Exams, however, were not held until June 1990 and it was not until September 4, 1990 that the Personnel Director responded to Chief Romanoski's request by certifying a list of eligible names for the classification of lieutenant.  On September 12, 1990, twenty-seven promotional appointments were made to the position of lieutenant.  In January 1991, another requisition was submitted to certify names to fill nine additional lieutenant positions, which were filled in that month.  Pending certification, however, Chief Romanoski believed that there were not enough funds available in the budget to pay overtime to officers in the same civil service classification where the vacancies existed and that if the vacancies were not filled, he would be forced to close fire stations.

2    The selected individuals continued to be classified on the payroll record, and paid, according to their respective civil service classification of firefighter/medic or lieutenant.

3    The Akron Fire Department Rules and Regulations adopted by the Director of Public Safety provide, under Section 8 of the Duties of Chief of the Division of Fire, that "[d]uring the absence or disability of any officer or member of the division, the Chief may detail an officer or member to the position temporarily vacant."  Section 3 of the Duties of Fire Lieutenants provides that "[t]he Lieutenant shall in the absence of the Captain assume the position of the Captain."

4    Section 1, Rule 6 of the Akron Civil Service Commission Rules provides that "[w]henever a vacancy in the classified service is to be filled, the appointing authority shall make requisition upon the Personnel Director for eligibles for appointment to the class and position for which the vacancy exists.  Such requisition *** shall specify *** whether the service is temporary *** or permanent ***."  Section 3 provides further that "[t]o expedite the process of filling more than one vacancy, additional names shall be sent to the appointing authority***."  Rule 7 provides that "[t]he appointing authority shall select from the list of eligibles certified to him by the Personnel Director, the number of persons required to fill the vacancies in his department***."  Section 3 of Rule

7 provides that any person approved by the Personnel Director may be appointed provisionally "[w]hen it is urgent that an immediate appointment be made to fill a vacant position and no one is available on an appropriate eligible list***. In no case shall a provisional appointment continue longer than ninety (90) days, nor shall there be a successive appointment of the same person." Section 4 provides that in cases of extreme emergency "an appointing authority may secure the necessary help wherever possible irrespective of the existence of suitable eligible lists. Within twenty-four (24) hours of making an emergency appointment the appointing authority shall so notify the Personnel Director in writing, stating the reasons for such appointment and such other information as the Personnel Director may require. *** Such appointments shall last no longer than seven (7) calendar days, but in the absence of available persons on suitable eligible lists and with the approval of the Personnel Director an emergency appointment may become a provisional appointment***."

Wright, J., concurring. I fully concur in the majority's holding that the Chief of the Fire Division "may not detail a member of his division to serve in a higher classified rank," but that, "under certain provisions set forth in the charter and civil service rules promulgated thereunder, [he may] provisionally appoint a member of his division to serve in a higher classified rank, upon authorization by the Personnel Director." I write here, however, to clarify why this is so.

Section 70 of the Charter of the city of Akron states in part: "The Chief of the Division of Fire shall be in immediate charge of the fire force and shall have control of the stationing and transfer of all firemen and other employees constituting said fire force, under such rules and regulations as the Mayor may prescribe." (Emphasis added.)

Based on his authority under Section 70, the Mayor, through his Director of Public Safety, has enacted an Akron fire department regulation which states that "[d]uring the absence or disability of any officer or member of the division, the Chief may detail an officer or member to the position temporarily vacant." It is from this regulation that Chief Romanoski purports to derive his authority to create the positions of "acting lieutenant" and "acting captain." In my judgment, however, the Akron fire department regulation is clearly outside the scope of authority granted to the Mayor by Section 70 of the Akron City Charter and is therefore invalid.

When previously faced with a city charter provision worded similarly to Section 70, this court construed the regulation to mean that the mayor or the safety director has "exclusive control of fire force allocation ***." (Emphasis added.) Novak v. Perk (1980), 64 Ohio St.2d 43, 47, 18 O.O.3d 251, 253, 413 N.E.2d 784, 786. That section, we held, "clearly gives the fire chief exclusive authority over individual assignments of fire department personnel." Id. at 45, 18 O.O.3d at 252, 413 N.E.2d at 785. In other words, once fire division employees have been hired, the mayor, and hence the fire chief, have complete control over their deployment. The fire chief is free to determine to what fire station his fire division employees are to be assigned and transferred. This interpretation does not provide the authority for a fire chief to permanently or

temporarily reassign or transfer employees to different job classifications.

As the majority correctly points out, Section 106 of the Akron City Charter provides the "sole authority to establish and standardize all positions in the classified civil service and to certify persons as eligible for appointment to each classified position."  Furthermore, Section 108 of the charter and the Akron Civil Service Commission Rules establish procedures for making permanent and temporary appointments to vacant positions.  These latter provisions specify procedures to be followed for routine replacements, as well as for various degrees of emergency situations.

I recognize that the Chief of the Fire Division is placed in a difficult position by the lack of funding and staff.  He is charged with a very important duty implicating public safety and, when faced with a shortage of qualified personnel for key positions, he must have some flexibility in controlling his forces.  But a holding contrary to the one today, while perhaps temporarily relieving a symptom, would not solve the real problem.  Rather, sanctioning Chief Romanoski's program would serve only to relieve the pressure from where it should actually be focused, on the city council, which is ultimately responsible for allocating the budget resources of the city. Our holding today supports this position.

Because I believe that Section 70 of the Akron City charter and the related provisions of the Akron Fire Department Rules and Regulations do not provide Chief Romanoski with the authority solely to place fire division personnel in positions other than those for which they have been certified and hired, and because the city charter with its associated civil service rules provides the Chief with a procedure for temporary reassignment of personnel, I concur.