I concur with the majority opinion in part and respectfully dissent in part. I must begin by observing that it is difficult to interpret an ordinance that is not carefully written. I agree with the opinion of the trial court judge as to the shortcomings in the writing of the Brook Park ordinances, which result in the controversy in this case. On the one hand, Ordinance 141.05 appears to track Revised Code 737.05 and .06, which read as follows:
737.05 Composition and control of police department.
 The police department of each city shall be composed of a chief of police and such other officers, patrolmen, and employees as the legislative authority thereof provides by ordinance.
 The director of public safety of such city shall have the exclusive management and control of all other officers, surgeons, secretaries, clerks and employees in the police department as provided by ordinances or resolution of such legislative authority. He may commission private policemen, who may not be in the classified list of the department, under such rules and regulations as the legislative authority prescribes. [Emphasis added.]
737.06. Chief of Police.
 The chief of police shall have exclusive control of the stationing and transfer of all patrolmen, auxiliary police officers, and other officers and employees in the police department, and police auxiliary unit, under such general rules and regulations as the director of public safety prescribes.
The Brook Park ordinance, on the other hand, while using identical language, significantly changes the sequence:
141.02 COMPOSITION; EXECUTIVE HEAD.
 (a) The Police Department shall consist of a Police Chief and not more than forty-three regular police officers. (Ord. 6162-1982. Passed 9-7-82.)
 (b) There is hereby established within the Police Department one Police Chief, one Police Captain, four Police Sergeants, four Police Lieutenants and a Detective Bureau. Such officers shall be appointed by the Director of Public Safety from the regular full-time membership of the Police Department. (Ord. 5715-1980. Passed 3-4-80)
 (c) Under the direction of the Mayor, the Director of Public Safety shall be the executive head of the Police Department. He shall have all the powers and duties connected with and incident to the appointment, regulation and government of such Department, except as otherwise provided by law. (Ord. 2650-1966. Passed 11-1-66.)
141.03 COST OF LIVING ALLOWANCE; INSURANCE.
* * *.
141.04 HOLIDAYS.
* * *.
141.05 CONTROL
 The Director of Public Safety shall have the exclusive management and control of other officers, surgeons, secretaries, clerks and employees in the Police Department as provided by ordinance or resolution. He may commission private policemen, who may not be in the classified list of the Department, under such rules and regulations as Council prescribes. (ORC 737.05) [Emphasis added.]
 The Police Chief shall have exclusive control of the stationing and transfer of all patrolmen, auxiliary police officers, and other officers and employees in the Police Department, and police auxiliary unit, under such general rules and regulations as the Director of Public Safety prescribes. (ORC 737.06)
Although two sections of the Brook Park Ordinances track verbatim the Revised Code and even specify the Revised Code section, the meaning of the first sentence of 141.05 is lost because the City did not follow the sequence in the original. Ordinance 141.05 begins with a reference to all other officers, surgeons, secretaries, clerks and employees in the Police Department as provided by ordinance or resolution. (Emphasis added.) Other has no meaning here, however, because no such staff was previously named in this ordinance. Without some immediate reference, there is nothing to exclude by the word other, a word which normally restricts a class. Because of this problem, I cannot agree with the majority in its reliance (p. 14) upon this imprecise sentence.
A second problem in interpreting the ordinances, as the lower court and the majority opinion observed, is that the Brook Park Ordinances refer to the police as a department, whereas the Brook Park Charter describes it as a division. Were it not for the many problems of language in the ordinances, as well as the charter,[1] this court would be constrained to accept the literal interpretation adopted by the trial court. However, it is precisely because of the many shortcomings of language that this court must take a very broad view of intent as inferred from the charter and ordinances as a whole.
I believe a key to resolving the issue rests with Section 8.07 of the Charter. On the one hand, the charter gives the Director of Public Safety exclusive right to demote, suspend or remove any officer in charge of a Division within the Department of Public Safety and any employee within said Department * * * for good cause. However, the charter also gives the Police and Fire Chiefs exclusive right to suspend any employee within their respective Divisions.[2] The Charter then proceeds to describe the procedure by which the Public Safety Director must inquire into the suspension and only then gives the Director authority to suspend, reduce in rank, or dismiss the employee.
Thus, as the lower court stated, the Charter provides for a high degree of civilian control over the Division of Police. However, the Charter also provides authority to the Chief for the day-to-day operation of the Police, including immediate suspension of employees, with review by the Director. The power to station and transfer is part of that day-to-day operational authority vested in the Chief. However, the Safety Director is the Executive Head of the Police Department. As such, the Police Chief must report to the Director. However, although the Chief must answer to the Director for his decisions, he is responsible for assigning the individual police officers. Thus I agree that the Chief assigns specific officers. The question here is what authority the Director has if, as was argued in the Director's brief, the Chief fails to timely follow a directive. Obviously, the Director could, if the problem were serious enough, suspend the Chief under 8.07 of the Charter and, in his absence, assign to another officer his duties, including implementing the directive at issue. But the professional nature of the Police Department requires that the Director work through the chain of command. Thus I concur in judgment regarding this directive: the Safety Director exceeded her authority in naming the officer for the canine task.
As to the second directive, I disagree with the majority opinion. Section 8.02 of the Charter gives to the Director authority to make necessary rules and regulations for the government of the Department and the division * * *. The authority of the Chief is not spelled out in the Charter. Thus any authority vested by the Ordinances must be interpreted consistent with the Charter. Moreover, even the ordinance specifies the Police Chief's exclusive control of the stationing and transfer of all patrolmen * * * and other officers * * * is under such general rules and regulations as the Director of Public Safety prescribes. Rules and regulations for the government of the Police Department includes policy as to what level and class of supervisory personnel are to serve on the various shifts. The Safety Director's order established a general rule: that is, that officers at the rank of lieutenant were to be scheduled on all regular shifts. The Director correctly interprets this directive as a policy decision on the same level of abstraction as a rule or regulation. The Chief has the authority to determine which specific lieutenants were to be assigned but only in compliance with the policy as outlined by the Director. As the Supreme Court of Ohio ruled in a case interpreting an identical provision regarding the stationing and transfer of firemen, this provision authorizes individual assignments of personnel. Novak v. Perk (1980), 64 Ohio St.2d 43. In the case at bar, the Safety Director had authority to craft a policy regarding the allocation of supervisory personnel.[3] She never exceeded that authority because she did not specify individual personnel. Thus I would affirm the lower court's interpretation regarding this directive.
I also agree with the majority that the Safety Director cannot assign detailed tasks exclusively to the Police Chief. It is within the Chief's authority to assign tasks to individual officers and staff and that includes delegating tasks. Again, the Director has the right to suspend the Chief if the Director finds cause to challenge the Chief's performance. The Chief, however, has discretion as to how to implement the general policies set by the Safety Director. Thus I would concur in part and dissent in part.
[1] The trial court properly observed that Article VIII Sections 8.04 and 8.05 of the Charter both employ the confusing language in active charge of a Chief. The more usual language is in the active charge of a Chief. When A is in charge of B, the usual meaning is that A is in charge, whereas when A is in the charge of B, the usual meaning is that B is in charge.
[2] I believe that this charter provision distinguishes between employees of the Department of Public Safety and employees of the Division of Police. The charter gives the Director the broader power to demote, suspend or remove the Police Chief, as well as employees within the Public Safety Department, but not employees within the Division of Police. The initial disciplinary stage for those employees appears to be only a suspension, followed by an inquiry and then possibly suspension, reduction in rank, or dismissal.
[3] The parties focused their arguments on authority under the Charter, Revised Code, and Ordinances. There was no specific discussion on how a directive regarding the assignment of lieutenants might, on a practical level, interfere with the day-to-day operations of the Police Department.