**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Wesolowski v. Broadview Hts. Planning Comm.,* **Slip Opinion No. 2019-Ohio-3713.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-3713

WESOLOWSKI, APPELLEE, *v.* CITY OF BROADVIEW HEIGHTS PLANNING COMMISSION, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Wesolowski v. Broadview Hts. Planning Comm.,* **Slip Opinion No. 2019-Ohio-3713.]**

*Zoning and planning—Municipal corporations—R.C. 711.09(C), including 30-day time limit for considering subdivision applications, applies to city planning commissions—A home-rule municipality's adoption of subdivision regulations constitutes an exercise of its police powers rather than an exercise of its powers of local self-government—R.C. 711.09(C) prevails over city's subdivision regulation—Court of appeals' judgment affirming trial court's judgment ordering commission to issue certificate of approval affirmed.*

(No. 2018-0711—Submitted March 27, 2019—Decided September 17, 2019.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 105697, 2018-Ohio-1295.

_____

**FISCHER, J.**

{¶ 1} In this case, we consider whether the provisions of R.C. 711.09(C) apply to a city planning commission and whether a home-rule municipality's adoption of regulations establishing procedures for submission and consideration of applications to subdivide property is an exercise of its powers of local self-government. We conclude that R.C. 711.09(C) does apply to city planning commissions and that a home-rule municipality's adoption of subdivision regulations constitutes an exercise of its police powers rather than an exercise of its powers of local self-government. We further conclude that R.C. 711.09(C) prevails over the municipal subdivision regulation at issue in this case, and we therefore affirm the judgment of the Eighth District Court of Appeals.

## I. Factual and Procedural Background

{¶ 2} In April 2016, appellant, the planning commission of the city of Broadview Heights, denied an application submitted by appellee, Gloria Wesolowski, seeking to subdivide property. Wesolowski filed an administrative appeal of that decision in the Cuyahoga County Court of Common Pleas. She alleged that the commission failed to comply with R.C. 711.09(C), which requires that the commission either approve or deny a subdivision application within 30 days after its submission. She asserted that she was entitled to a judgment declaring her application approved and that the commission must issue her a certificate in lieu of written endorsement of approval pursuant to R.C. 711.09(C).

{¶ 3} The trial court granted partial summary judgment in Wesolowski's favor. It found that the commission had failed to comply with the procedural standards and time frames set forth in R.C. 711.09(C) and that Wesolowski had satisfied the conditions set forth in that statute for issuance of a certificate of approval. The court accordingly granted declaratory judgment ordering the commission to issue a certificate of approval to Wesolowski.

**{¶ 4}** On appeal, the commission argued that the trial court erred because R.C. 711.09(C) does not apply to cities and because the city's regulations, adopted pursuant to its home-rule powers, prevail over R.C. 711.09(C). The Eighth District Court of Appeals affirmed the trial court's judgment.

**{¶ 5}** The Eighth District first held that when R.C. 711.09 is read as a whole, it is clear that R.C. 711.09(C) applies to cities. 2018-Ohio-1295, 110 N.E.3d 705, ¶ 22. It further held that local subdivision regulations are an exercise of a municipality's police powers rather than an exercise of a municipality's powers of local self-government. *Id.* at ¶ 24. The court then addressed the question whether the state statute prevails over the relevant municipal ordinance, Section 1244.03 of the Broadview Heights Codified Ordinances ("B.H.C.O. 1244.03"). The court noted that R.C. 711.09(C) requires that a planning commission either approve or deny a subdivision application within 30 days whereas B.H.C.O. 1244.03 is silent as to any time frame. *Id.* at ¶ 29. The Eighth District concluded that the lack of a time frame in B.H.C.O. 1244.03 impermissibly conflicts with the procedures set forth in R.C. 711.09(C). *Id.* at ¶ 29-31. Having concluded that B.H.C.O. 1224.03 conflicts with R.C. 711.09(C) and that enacting local subdivision regulations is an exercise of a municipality's police powers, the Eighth District concluded that R.C. 711.09(C) prevails over the ordinance. *Id.* at ¶ 31.

**{¶ 6}** We accepted jurisdiction over the commission's first and second propositions of law:

> 1. The adoption of local subdivision regulations by a home rule municipal corporation is an exercise of the power of local self-government and, thus, prevail[s] over state law, specifically the procedures set forth in R.C. 711.09(C).

> 2. Giving R.C. 711.09(C) its plain and ordinary meaning,
> the subdivision procedures set forth therein do not apply to a *city*
> planning commission.

(Emphasis sic.) 153 Ohio St.3d 1452, 2018-Ohio-3026, 103 N.E.3d 830.

## II. Analysis

{¶ 7} Before we may consider the issue whether a home-rule municipality's adoption of subdivision regulations constitutes an exercise of its powers of local self-government, we must first address whether R.C. 711.09(C) applies to cities. We will accordingly consider the commission's propositions of law in reverse order.

*A. The 30-day time limit set forth in R.C. 711.09(C) applies to both cities and villages*

{¶ 8} R.C. 711.09 sets forth procedures for approving and recording plats of subdivisions of land. Division (A) of that section applies specifically to cities:

> (1) Except as otherwise provided in division (A)(2) of this
> section, when *a city planning commission* adopts a plan for the
> major streets or thoroughfares and for the parks and other open
> public grounds *of a city or any part of it*, or for the unincorporated
> territory within three miles of the corporate limits *of a city or any
> part of it*, then no plat of a subdivision of land within that *city or
> territory* shall be recorded until it has been approved by *the city
> planning commission* and that approval endorsed in writing on the
> plat. If the land lies within three miles of more than one *city*, then
> division (A)(1) of this section applies to the approval of *the planning
> commission of the city* whose boundary is nearest to the land.

(Emphasis added.)  R.C. 711.09(A).

{¶ 9} Division (B) of R.C. 711.09 applies specifically to villages:

(1) Except as otherwise provided in division (B)(2) of this section, when *a village planning commission, a platting commissioner, or, if there is no commission or commissioner, the legislative authority of a village*, adopts a plan for the major streets or thoroughfares and for the parks and other public grounds *of a village or any part of it*, then no plat of a subdivision of land within that *village* shall be recorded until it has been approved by *the village commission, commissioner, or legislative authority* and that approval endorsed in writing on the plat. If the county in which the *village* lies contains no cities, has no county subdivision regulations in effect, and *the village commission, commissioner, or legislative authority* adopts a plan for the major streets or thoroughfares and for the parks and other public grounds for the unincorporated territory within one and one-half miles of the corporate limits of *the village or any part of it*, then no plat of a subdivision of land shall be recorded until it has been approved by *the village commission, commissioner, or legislative authority* and that approval is endorsed in writing on the plat.  If the land lies within one and one-half miles of more than one *village*, then division (B)(1) of this section applies to the approval of *the commission, commissioner, or legislative authority of the village* whose boundary is nearest to the land.

(Emphasis added.)

{¶ 10} At issue in this case is whether division (C) of R.C. 711.09 applies only to cities, only to villages, or to both cities and villages.  That division provides:

The approval of *the planning commission, the platting commissioner, or the legislative authority of a village* required by this section, or the refusal to approve, shall be endorsed on the plat within thirty days after the submission of the plat for approval or within such further time as the applying party may agree to; otherwise that plat is deemed approved, and the certificate of *the planning commission, the platting commissioner, or the clerk of the legislative authority*, as to the date of the submission of the plat for approval and the failure to take action on it within that time, shall be issued on demand and shall be sufficient in lieu of the written endorsement or other evidence of approval required by this section. *The planning commission, platting commissioner, or legislative authority of a village* shall not require a person submitting a plat to alter the plat or any part of it as a condition for approval, as long as the plat is in accordance with the general rules governing plats and subdivisions of land, adopted as provided in this section, in effect at the time the plat was submitted. The ground of refusal or approval of any plat submitted, including citation of or reference to the rule violated by the plat, shall be stated upon the record of *the commission, commissioner, or legislative authority.* * * *

The *planning commission, platting commissioner, or legislative authority of a village* may adopt general rules governing plats and subdivisions of land falling within its jurisdiction in order to secure and provide for the coordination of the streets within the subdivision with existing streets and roads or with the plan or plats of the municipal corporation, for the proper amount of open spaces for traffic, circulation, and utilities, and for the avoidance of future

congestion of population detrimental to the public health or safety but shall not impose a greater minimum lot area than forty-eight hundred square feet. The rules may provide for their modification by *the planning commission* in specific cases where unusual topographical or other exceptional conditions require the modification. The rules may require the county department of health to review and comment on a plat before *the planning commission, platting commissioner, or legislative authority of a village* acts upon it and may also require proof of compliance with any applicable zoning resolutions as a basis for approval of a plat.

However, *no city or village planning commission* shall adopt any rules requiring actual construction of streets or other improvements or facilities or assurance of that construction as a condition precedent to the approval of a plat of a subdivision unless the requirements have first been adopted by *the legislative authority of the city or village* after a public hearing. The rules shall be promulgated and published as provided by sections 731.17 to 731.42 of the Revised Code, and before adoption a public hearing shall be held on the adoption and a copy of the rules shall be certified by the commission, commissioner, or legislative authority to the county recorder of the county in which *the municipal corporation* is located.

In the exercise of any power over or concerning the platting and subdivision of land or the recording of plats of subdivisions by *a city, county, regional, or other planning commission* pursuant to any other section of the Revised Code, the provisions of this section with respect to appeals from a decision of a planning commission apply to the decision of any such commission in the exercise of any

power of that kind granted by any other section of the Revised Code in addition to any other remedy of appeal granted by the Revised Code.  When a plan has been adopted as provided in this section, the approval of plats shall be in lieu of the approvals provided for by any other section of the Revised Code, so far as territory within the approving jurisdiction of the commission, commissioner, or legislative authority, as provided in this section, is concerned. Approval of a plat shall not be an acceptance by the public of the dedication of any street, highway, or other way or open space shown upon the plat.

(Emphasis added.)  R.C. 711.09(C).

{¶ 11} The commission argues that because the word "city" does not appear in the first paragraph of R.C. 711.09(C), including the language describing the 30-day time limit for considering subdivision applications, and because the first paragraph refers only to villages ("the planning commission, the platting commissioner, or the legislative authority of a village"), the plain and unambiguous language of R.C. 711.09(C) dictates that its first paragraph does not apply to a city planning commission.

{¶ 12} The Eighth District disagreed.  It reasoned that the language of R.C. 711.09(B) shows that when a division of R.C. 711.09 applies only to villages, the division's language specifically provides that it applies to the actions of "a village planning commission, a platting commissioner, or, if there is no commission or commissioner, the legislative authority of a village" and "the village commission, commissioner, or legislative authority."  2018-Ohio-1295, 110 N.E.3d 705, at ¶ 21. The court concluded that because R.C. 711.09(C) does not contain that clear, limiting language but, rather, includes a general reference to a "planning

8

commission" without a qualifier, division (C) must be read more broadly as applying to both cities and villages. *Id.* at ¶ 21.

{¶ 13} We agree with the Eighth District's conclusion that R.C. 711.09(C) applies to both cities and villages. If the General Assembly had intended division (C) to apply only to cities, it would have made that clear by including the limiting language used in division (A): "when *a city planning commission * * *"* (emphasis added), R.C. 711.09(A). Likewise, if the General Assembly had intended division (C) to apply only to villages, it would have made that clear by including the limiting language used in division (B): "when *a village planning commission, a platting commissioner, or, if there is no commission or commissioner, the legislative authority of a village * * *"* (emphasis added), R.C. 711.09(B). Division (C) contains neither limitation. Instead, it uses the phrase "the planning commission, the platting commissioner, or the legislative authority of a village."

{¶ 14} Because R.C. 711.09(C) generally refers to "the planning commission" and "platting commissioner" in contrast to the language of divisions (A) and (B) of R.C. 711.09 and because division (C) specifically refers only to "the legislative authority of a village," we conclude that division (C) applies to the planning commissions of both cities and villages. Reading R.C. 711.09(C) as a whole reinforces this conclusion given that division (C) includes references to both cities and villages, as well as to municipal corporations, in its third paragraph.

{¶ 15} For these reasons, we hold that the provisions of R.C. 711.09(C), including the 30-day time limit for consideration of subdivision applications, apply to both cities and villages.

*B. A home-rule municipality's adoption of subdivision regulations is an exercise of its police powers*

{¶ 16} Having concluded that the provisions of R.C. 711.09(C) apply to cities, we next consider whether a home-rule municipality's adoption of

9

subdivision regulations is an exercise of its powers of local self-government that prevails over the procedures set forth in R.C. 711.09(C).

{¶ 17} Article XVIII, Section 3 of the Ohio Constitution provides: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." This court has set forth a three-part test for determining whether a provision of a state statute takes precedence over a municipal ordinance: "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 9. The issue raised in the commission's first proposition of law concerns the second prong of that test—whether a home-rule municipality's adoption of subdivision regulations is an exercise of its police powers or an exercise of its powers of local self-government. If it is an exercise of its powers of local self-government, then the local ordinance prevails over the state statute. *See Ohio Assn. of Pub. School Emps., Chapter No. 471 v. Twinsburg*, 36 Ohio St.3d 180, 182, 522 N.E.2d 532 (1988) ("municipal charter and ordinance provisions enacted under the power of local self-government prevail over state statutes, and only municipal regulations enacted pursuant to a city's police powers are subject to the general laws of the state"), citing *State ex rel. Canada v. Phillips*, 168 Ohio St. 191, 151 N.E.2d 722 (1958).

{¶ 18} An ordinance adopted under a power of local self-government "must relate 'solely to the government and administration of the internal affairs of the municipality.' " *Marich v. Bob Bennett Constr. Co.*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 11, quoting *Beachwood v. Cuyahoga Cty. Bd. of Elections*, 167 Ohio St. 369, 148 N.E.2d 921 (1958), paragraph one of the syllabus. We have held, for example, that the determination of the salaries of city employees,

*N. Ohio Patrolmen's Benevolent Assn. v. Parma*, 61 Ohio St.2d 375, 383, 402 N.E.2d 519 (1980), and the procedure for appointing city police officers, *Canada* at paragraph one of the syllabus, constitute matters of local self-government. By contrast, a police-power regulation seeks to "protect the public health, safety, or morals, or the general welfare of the public." *Marich* at ¶ 11.

{¶ 19} Here, the city's planning ordinance does not relate solely to the management of the city's internal affairs. Rather, subdivision planning regulates the conduct of the city's citizens for the general welfare of the public by restricting the division of land. As we have stated previously, subdivision planning "embraces the systematic and orderly development of a community with particular regard for streets, parks, industrial and commercial undertakings, civic beauty and other kindred matters properly included within the police power." *State ex rel. Kearns v. Ohio Power Co.*, 163 Ohio St. 451, 460, 127 N.E.2d 394 (1955). By its own terms, the purpose of B.H.C.O. Chapter 1244 is to "define the steps by which a developer may design, make an application, record plats and construct improvements." B.H.C.O. 1244.01(A). In turn, the planning commission must comply with certain procedures to "review, make recommendations, approve the plans and otherwise administer these regulations." *Id.* The ordinance does not relate to a matter of internal city governance. Rather, it regulates the conduct of city citizens by imposing requirements on subdivision applicants, and it prescribes the manner in which the commission must carry out its public functions.

{¶ 20} Here, Wesolowski submitted her subdivision application under B.H.C.O. 1244.03. Subsection (B)(1) addresses the requirements that applicants must follow when submitting a sketch plan. If the planning commission decides to reject a proposed plan, "the Commission shall state the conditions to be complied with before it will be approved and return the sketch to the developer with reasons specified." B.H.C.O. 1244.03(D). The city's ordinance does not impose a deadline for responding to an application. By contrast, R.C. 711.09(C) states that if a

planning commission fails to approve or deny an application for plat approval within 30 days, a certificate of approval "shall be issued on demand." The ordinance conflicts with the statute because it permits what the statute forbids—a response later than 30 days after the submission of a subdivision request. Because the city's ordinance is an exercise of police power that conflicts with a state law, the ordinance must give way to the requirements in R.C. 711.09(C). *See Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 9.

{¶ 21} The commission argues that because the city's subdivision regulations affect only the city itself, without any extraterritorial effects, the city's subdivision regulations are an exercise of its powers of local self-government and are a matter for its own determination.

{¶ 22} The Eighth District rejected this argument. In doing so, it relied on this court's conclusion in *Kearns* that the adoption and enforcement of planning measures is an exercise of local police powers. *Kearns*, 163 Ohio St. at 460, 127 N.E.2d 394, citing 1 Yokley, *Zoning Law and Practice*, Section 1, at 2-3 (2d Ed.1953), *Mansfield & Swett, Inc. v. W. Orange*, 120 N.J.L. 145, 149, 198 A. 225 (1938), and *Mills v. Baton Rouge*, 210 La. 830, 839, 28 So.2d 447 (1946).

{¶ 23} We see no reason to deviate from this court's statement in *Kearns* that the adoption and enforcement of planning measures constitutes an exercise of local police powers, as opposed to an exercise of the powers of local self-government. *Kearns* has been in effect for more than 60 years, and there is no persuasive argument supporting a conclusion that the rule defies practical workability.

{¶ 24} The commission offers two arguments in support of its assertion that we should not apply *Kearns* in this case. First, it argues that this court's reliance on *Zoning Law and Practice* was imprecise and that this court should have differentiated between "procedural" and "substantive" planning regulations. As an example of substantive planning regulations, the commission identifies

specifications for water and sewer service, and it concedes that substantive planning regulations would be an exercise of local police powers. The commission distinguishes substantive planning regulations, however, from what it terms "procedural" planning regulations, citing as an example regulations specifying how long a planning commission may take to issue a decision. It asserts that the adoption of procedural planning regulations constitutes an exercise of the powers of local self-government.

{¶ 25} We decline to distinguish between substantive and procedural regulations for the purpose of analyzing whether a municipality's adoption of subdivision regulations constitutes an exercise of its powers of local self-government. The commission cites no authority for doing so, and we are unconvinced that the substantive/procedural distinction would hold up in practice. There may often be no clear line between what constitutes a substantive regulation and what constitutes a procedural regulation, and even if a clear distinction could be made, municipalities might attempt to work around it by adopting regulations that appear to be procedural on their face but would actually be substantive in their effect. Rather than encourage litigation that would put courts in the position of having to decide which side of this blurry line a regulation is on, we find it more sensible to continue to adhere to our home-rule jurisprudence and the clear rule set forth in *Kearns*.

{¶ 26} Second, the commission argues that *Kearns* is distinguishable because that case involved a regional planning commission, which, unlike a municipality, lacks broad home-rule authority. We decline the commission's invitation to hold that an action constitutes an exercise of local police powers when taken by one governmental entity but that the identical action constitutes an exercise of the powers of local self-government when taken by another governmental entity. Which governmental entity acted does not affect the

determination that an action is an exercise of local police powers. Again, this court set forth a clear, workable rule in *Kearns*, and we will continue to abide by it.

**{¶ 27}** We therefore reaffirm our statement in *Kearns*, 163 Ohio St. at 460, 127 N.E.2d 394, that the adoption of planning measures constitutes an exercise of local police powers. We accordingly hold that a home-rule municipality's adoption of subdivision regulations is an exercise of its police powers and that R.C. 711.09(C) thus prevails over any conflicting municipal subdivision regulation.

**{¶ 28}** As a final note, we acknowledge that in its reply brief, the commission argues that the Eighth District failed to consider whether R.C. 711.09(C) is a general law, pursuant to the third prong of the *Canton* test. Because this argument is beyond the scope of the propositions of law over which this court accepted jurisdiction, we decline to consider it in this opinion. *See State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 61.

### III. Conclusion

**{¶ 29}** We hold that the 30-day time limit set forth in R.C. 711.09(C) applies to both cities and villages. We further hold that a home-rule municipality's adoption of subdivision regulations is an exercise of its police powers and that R.C. 711.09(C) thus prevails over any conflicting municipal subdivision regulation. For these reasons, we affirm the judgment of the Eighth District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by DEWINE, J.

_____

**KENNEDY, J., dissenting.**

**{¶ 30}** Because the municipal power of local self-government is protected from state interference by Article XVIII, Section 3 of the Ohio Constitution and because the adoption of Section 1244.03 of the Broadview Heights Codified Ordinances ("B.H.C.O. 1244.03") was an exercise of local self-government,

B.H.C.O. 1244.03 takes precedence over the conflicting requirement of R.C. 711.09(C) that a city planning commission approve or deny a subdivision application within 30 days. I therefore dissent and would reverse the judgment of the Eighth District Court of Appeals and remand the case to the trial court for further proceedings.

{¶ 31} The Home Rule Amendment establishes municipalities' authority "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Article XVIII, Section 3, Ohio Constitution.

{¶ 32} In conducting the home-rule analysis, we first consider "whether the ordinance involves an exercise of local self-government or an exercise of local police power." *In re Complaint of Reynoldsburg*, 134 Ohio St.3d 29, 2012-Ohio-5270, 979 N.E.2d 1229, ¶ 24. We have explained that "[i]f the ordinance relates solely to self-government, the analysis ends because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction." *Id*. However, a conflicting ordinance enacted pursuant to a municipality's police power "must yield in the face of a general state law." *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23. The majority finds an exercise of the police power in this case. I disagree.

{¶ 33} We have described ordinances enacted under the power of local self-government as "relat[ing] 'solely to the government and administration of the internal affairs of the municipality.' " *Marich v. Bob Bennett Constr. Co.*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 11, quoting *Beachwood v. Cuyahoga Cty. Bd. of Elections*, 167 Ohio St. 369, 148 N.E.2d 921 (1958), paragraph one of the syllabus. In contrast, "the police power allows municipalities to enact regulations only to protect the public health, safety, or morals, or the general welfare of the public." *Id.* " 'Any municipal ordinance, which prohibits the doing of something without a municipal license to do it, is a police regulation within the

meaning of Section 3 of Article XVIII of the Ohio Constitution.' " *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted*, 65 Ohio St.3d 242, 244, 602 N.E.2d 1147 (1992), quoting *Auxter v. Toledo*, 173 Ohio St. 444, 446, 183 N.E.2d 920 (1962).

{¶ 34} The majority relies on *State ex rel. Kearns v. Ohio Power Co.*, 163 Ohio St. 451, 460, 127 N.E.2d 394 (1955), for the proposition that the adoption of any city planning regulation—whether substantive or procedural—is an exercise of the police power. But *Kearns* was not a home-rule case. It involved a regional planning commission, established pursuant to statute, seeking to compel an electric utility (which was regulated by the Public Utilities Commission of Ohio and had the statutory power of eminent domain) to comply with a regional plan. Our decision in that case did not mention or apply the Home Rule Amendment, and it cannot be read so broadly as holding that any ordinance relating to city planning may be superseded by the General Assembly. There is a difference between a city planning ordinance, enacted by a municipality pursuant to the police power, that prohibits the subdivision of land without a municipal license to do it and an ordinance that establishes a city planning commission and sets forth the procedures that the commission must follow in exercising the municipal police power.

{¶ 35} For example, even though a city's police department exercises the police power in enforcing ordinances, we have recognized that "[t]he organization and regulation of its police force, as well as its civil service functions, are within a municipality's powers of local self-government," *Harsney v. Allen*, 160 Ohio St. 36, 41, 113 N.E.2d 86 (1953). As this court explained in *N. Ohio Patrolmen's Benevolent Assn. v. Parma*, " '[t]he mere fact that the exercise of a power of local self-government may happen to relate to the police department does not make it a police regulation within the meaning of the words "police-regulations" found in Section 3 of Article XVIII of the Constitution.' " 61 Ohio St.2d 375, 383, 402 N.E.2d 519 (1980), quoting *State ex rel. Canada v. Phillips*, 168 Ohio St. 191, 151

N.E.2d 722 (1958), paragraph five of the syllabus; *accord Local 330, Akron Firefighters Assn., AFL-CIO v. Romanoski*, 68 Ohio St.3d 596, 599, 629 N.E.2d 1044 (1994) ("A municipality has the authority to exercise all powers of local self-government and may allocate authority between its fire chief and civil service commission over the *utilization* and employment of its fire protection forces" [emphasis added]).

{¶ 36} It is not enough to consider whether an ordinance simply relates to the exercise of the police power; rather, "[t]o determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceedings thereunder must be considered," *Beachwood*, 167 Ohio St. at 371, 148 N.E.2d 921. We therefore must review the ordinance on its own terms to determine whether it regulates the government and administration of the municipality's internal affairs or whether it serves to protect the public health, safety, or morals or the general welfare of the public. That is, does the ordinance regulate the municipality or its citizens?

{¶ 37} Relevant here, B.H.C.O. 1244.03(B)(2) provides that "[t]he Commission shall consider the sketch plan at the next regularly scheduled meeting after receipt of an application and all required maps, sketches and information, and shall approve or disapprove at the following regular meeting." And B.H.C.O. 1244.03(D) states: "*Rejection*. If the Commission determines that [the proposed division of land] is a major subdivision, or the sketch plan is not approved for other reasons, the Commission shall state the conditions to be complied with before it will be approved and return the sketch to the developer with reasons specified." (Underlining sic.)

{¶ 38} B.H.C.O. 1244.03 does not specify a time period within which the planning commission must act before the application will be deemed approved. Rather, division (B) directs the commission to approve or disapprove the application at the next regularly scheduled meeting after the application was first

considered, and division (D) sets forth the process by which the commission must inform the applicant of its decision to deny the application—i.e., by returning the sketch to the applicant and explaining the reasons for the denial. In enacting this ordinance, the city council was regulating only an arm of the city, governing and administering the city's internal affairs. That is the exercise of local self-government.

{¶ 39} R.C. 711.09(C), in contrast, imposes a separate procedure for the planning commission to follow. The statute requires the commission to endorse the approval or denial of the subdivision plat within 30 days after its submission or else the plat is deemed approved. This court has explained that a 30-day limitation for the approval or rejection of a subdivision plat "is designed to ensure prompt action to protect the developer from bureaucratic obstructionism." *P. H. English, Inc. v. Koster*, 61 Ohio St.2d 17, 19, 399 N.E.2d 72 (1980) (construing R.C. 711.10, an analogous provision applying to county and regional planning commissions). That is, R.C. 711.09(C) regulates the planning commission, stripping it of authority to approve or deny an application after 30 days. By regulating how a municipality governs and administers its own planning commission, the statute purports to control the municipality's exercise of self-government. The Home Rule Amendment, however, protects municipalities from this type of interference in their internal affairs.

{¶ 40} Because B.H.C.O. 1244.03(B) and (D) represent the exercise of self-government, the analysis ends there; the Ohio Constitution authorizes Broadview Heights to exercise all powers of local self-government within its jurisdiction. For these reasons, I would reverse the judgment of the court of appeals and remand this case to the trial court to consider appellee Gloria Wesolowski's remaining claims.

DEWINE, J., concurs in the foregoing opinion.

_____

Walter Haverfield, L.L.P., R. Todd Hunt, and Aimee W. Lane, for appellant.

Kristen L. Sours, urging affirmance for amici curiae Ohio Home Builders Association and National Association of Home Builders.

Mansour Gavin, L.P.A., Anthony J. Coyne, and Kathryn E. Weber, urging reversal for amici curiae American Planning Association, Ohio Chapter, and Northeast Ohio Law Directors Association.

_____