THE STATE, EX REL. GERHARDT, MAYOR, ET AL., *v.* KREHBIEL, JUDGE, ET AL.

THE STATE, EX REL. GORDON, CITY MGR., *v.* BARNETT.

(Nos. 74-46 and 74-74—Decided April 24, 1974.)

*Mr. Joseph J. Freemas, Mr. Horace W. Baggott, Sr.,* and *Mr. Robert M. Lawlis,* for relators in case No. 74-46 and respondent in case No. 74-74.

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. Robert J. Surdyk,* for respondent James A. Krehbiel in case No. 74-46.

*Messrs. Topper, Alloway, Goodman, DeLeone & Duffey, Mr. John J. Duffey, Messrs. Pickrel, Schaeffer & Ebeling, Mr. William L. Havemann* and *Mr. David L. Hall,* for respondents John P. McHugh and Irl L. Gordon in case No. 74-46.

*Messrs. Topper, Alloway, Goodman, DeLeone & Duffey, Mr. John J. Duffey, Messrs. Pickrel, Schaeffer & Ebeling, Mr. John P. McHugh, Mr. William L. Havemann* and *Mr. David L. Hall,* for relator in case No. 74-74.

WILLIAM B. BROWN, J. These cases invoke the original jurisdiction of this court in prohibition (case No. 74-46) and in quo warranto (case No. 74-74), and grow out of political disputes in the city of Moraine, a charter city.

From January 16, 1968, the office of city manager (the subject of the quo warranto action herein) has been held by Irl L. Gordon, relator in case No. 74-74.

The legislative power of Moraine is vested by charter in a council consisting of the mayor and six other members.

At the general election on November 6, 1973, Elva Caudill and Lanta Lawrence (relators in case No. 74-46) were elected to city council. The election served to alter the power structure of council by incumbents Mayor Carl W. Gerhardt and Robert Riley (relators in case No. 74-46), joining with the newly elected council members to form a four-member majority in council.

At the January 2, 1974, council meeting, the new members were installed in office, and it is the legitimacy of subsequent actions taken at that meeting which serves as the focal point of this litigation.

Over the objections[1] of minority council members, Resolution 753-R, a resolution to appoint Dwight W. Barnett (relator in case No. 74-46 and respondent in case No. 74-74), as city manager replacing Gordon, was read and adopted by a 4-to-3 vote. Whereupon, Barnett appointed Lawlis (relator in case No. 74-46) to the office of law director.

Councilman Payne renewed his objections to the "unorthodox procedure" of the meeting, and pointed out that council was not adhering to the city charter.

---

[1]Councilman Estridge objected that the official agenda did not contain an item pertaining to "the appointments of city officials by resolution." Mayor Gerhardt responded that the agenda had been revised on December 31, 1973.

Councilmen Payne and Estridge objected that the city could not hire another city manager because they already had one.

The original agenda stated: "Resolutions-none." The revised agenda stated: "Resolutions: ..........................," and contained the additional item: "Appointment of city officials by resolution."

Council then proceeded, by a simple majority vote, to install new members on the planning commission, the board of zoning appeals, and the park and recreation board.

"Resolutions" was the next item on the revised agenda:

Resolution 301-H, adopted by a 4-to-3 vote, repealed a resolution passed on December 19, 1973, which had provided for salary increases and overtime pay to city employees. Resolution 755-R, adopted by the same vote, repealed resolutions passed on February 17, 1973, which had reaffirmed McHugh's (a respondent in case No. 74-46) status as law director and confirmed McHugh's action of instituting a lawsuit[2] against the mayor who had "interfered with" McHugh as court prosecutor. Resolution 586-AR, adopted by a 5-to-2 vote, repealed a resolution passed on January 17, 1973, which had set forth standards of administering and awarding contracts entered into by the city. Resolution 740-AR, adopted by a 4-to-2 vote, repealed a resolution passed on December 19, 1973, which had accepted the bid of Ja-Mi Construction Company for the construction of a general purpose community building.

Ordinance 398-A, the last item of legislation adopted, provided temporary appropriations for current operating expenses of the city for the period January 1, 1974, through February 15, 1974. Ordinance 398, passed December 19, 1973, provided appropriations for the same items listed in 398-A, and was to remain in effect from January 1, 1974, through March 31, 1974. The earlier ordinance is not reported in the minutes of the council meeting as being repealed. However, Section 11 of ordinance 398-A provides: "The foregoing appropriations supersede and replace any and all prior temporary appropriation ordinances."

In the quo warranto action (No. 74-74), Gordon, relator, alleges that, on January 3, 1974, the day after the council meeting detailed above, Barnett entered upon the premises of the Moraine municipal building and "established an office for himself and * * * Lawlis"; "issued orders

[2]See footnote 3, *infra.*

to various persons including the finance director, directing him to consider relator [Gordon] as no longer employed by the city and to make no payments for salary or otherwise to relator; further respondent [Barnett] issued orders to all division and department heads to be present for a staff meeting the following day of January 4, 1974. * * *''

The first question presented is whether Gordon is entitled to hold the office of city manager despite the efforts of a majority of council to install Barnett in that office.

Barnett contends that Gordon was properly removed by a resolution of council. In our view, council action by resolution is subject generally to the same restraints as council action by ordinance. This court, in paragraph two of the syllabus in *Reed* v. *Youngstown* (1962), 173 Ohio St. 265, held:

"No ordinance can conflict with the provisions of a city charter and be effective."

Thus, we look to the charter to determine the legitimacy of Gordon's removal. Section 5-7 of Article V of the Moraine charter provides:

"Removal of the city manager shall be only by majority action of the council. Should such removal become necessary, council shall, thirty (30) days before the effective date, notify the city manager of such intent, stating cause for removal, and may immediately suspend him from office and appoint the mayor or other officer of the city to perform the duties of the manager during his suspension. The manager may, within one (1) week after notice of suspension, reply in writing and request an appearance before council and mayor. Council and mayor shall grant this request within two (2) weeks from the date the request is received. After full consideration, council and mayor may then declare the manager removed. *Action resulting in suspension or removal shall be by resolution of council with an affirmative vote of at least five (5) members of the council.* The decison of the council shall be final. In any case of removal, the former manager shall be paid any unpaid balance of salary and salary for the next two (2) months following the adoption of the resolution." (Emphasis ours.)

The emphasized language of Section 5-7 clearly shows that five votes are required to remove a city manager. However, Barnett argues that removal may be accomplished by mere majority action (4-to-3 vote) pursuant to the first sentence of Section 5-7. That argument not only ignores the specific 5-vote minimum requirement, but it overlooks the obvious intent of the first sentence which is to require a "majority" of council to *initiate* the procedure of removal, at a time prior to final action, and final action requires five votes for removal.

By a 4-to-3 vote, council purported to remove Gordon and install Barnett as city manager. Article V of the charter contemplates but one city manager, and it is our opinion that the charter was not followed in the purported removal of Gordon.

In *Cleveland, ex rel. Neelon*, v. *Locher* (1971), 25 Ohio St. 2d 49, 52, this court said:

"If the members of a legislative body can ignore, with impunity, the mandates of a * * * city charter, then it is certain that the faith of the people in constitutional government will be undermined and eventually eroded completely."

Therefore, it is our conclusion that where a municipal charter prescribes the manner for removal of municipal officers, any attempt by the municipality's legislative body to remove an officer in a manner at variance or in conflict with the charter's directives is a nullity. Accordingly, Gordon has not been effectively removed as city manager, and is therefore entitled to sole possession of that office.

In the prohibition action (No. 74-46) the first question is whether a writ of prohibition may issue against McHugh who has tenaciously continued to carry out the duties of law director.

The granting of a writ of prohibition is not warranted unless it is shown that the "officer against whom it is sought must be about to exercise judicial or quasi-judicial power." *State, ex rel. Northern Ohio Telephone Co.*, v. *Winter* (1970), 23 Ohio St. 2d 6, 8.

According to the complaint for writ of prohibition, McHugh has filed and "continues to file various lawsuits" against the relators therein, and the relief requested against McHugh is that he "be prohibited from filing further law suits * * * or proceeding further with existing suits filed * * * in his capacity as * * *" law director.

It may be said that the filing of a lawsuit initiates the judicial process, but if relators in case No. 74-46 intended to show that McHugh was about to *exercise* judicial or quasi-judicial *power*, they have fallen far short of their goal. It is obvious that a law director who merely files a lawsuit is not amenable to a writ of prohibition.

The second question is whether a writ of prohibition should issue against Judge Krehbiel to terminate a proceeding in his court styled *Moraine et al.* v. *Gerhardt et al.*, case No. 74-16.

The complaint in case No. 74-16 requests the following relief: (1) Enjoin Barnett and Lawlis from assuming the respective offices of city manager and law director "until such time" as they establish their right to those offices in a court of competent jurisdiction; (2) declare all actions taken at the January 2, 1974 council meeting void as being an abuse of corporate power; (3) enjoin the implementation of all action taken by council on January 2, 1974; and (4) enjoin the director of finance for Moraine from (a) expending funds pursuant to legislation passed by council on January 2, 1974, and (b) reducing the salaries of city employees whose pay had been increased by the preceding council.

In order for a writ of prohibition to issue in this case it would be necessary for relators to show that Judge Krehbiel is acting, or intends to act, beyond his jurisdiction. *State, ex rel. Northern Ohio Telephone Co.,* v. *Winter, supra.*

Relators argue that branch (1) of the relief requested is in the nature of quo warranto, and thus beyond the jurisdiction of the Court of Common Pleas. However, insofar as branch (1) only seeks to enjoin Barnett and Lawlis from seizing the offices of city manager and law director *until*

*such time* as proper title to those offices are established, that branch is moot by virtue of this opinion. Moreover, Judge Krehbiel has not asserted jurisdiction to determine the right to the offices, but has postponed the proceedings pending this court's determination.

It is our opinion that the remaining three branches of the complaint in case No. 74-16 are properly before the Court of Common Pleas.

McHugh instituted case No. 74-16 upon the demand of a taxpayer. R. C. 733.56 provides:

"The solicitor shall apply, in the name of the municipal corporation, to a court of competent jurisdiction for an order of injunction to restrain the misapplication of funds of the municipal corporation, the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the municipal corporation in contravention of the laws or ordinance governing it, or which was procured by fraud or corruption."

The issues remaining to be tried before the Court of Common Pleas pertain to the validity of legislation passed at the January 2, 1974, council meeting, excluding the herein invalidated legislation which purported to employ Barnett and Lawlis.

Judge Krehbiel has not exceeded his jurisdiction in this case and may proceed in case No. 74-16 to a determination of the legality of extraordinarily pervasive legislation passed at the January 2, 1974, council meeting.

The joint exhibits presented to this court include an order, entered February 28, 1973, by the Court of Common Pleas of Montgomery County in *Moraine, ex rel. McHugh, v. Gerhardt,* No. 73-339, which reads, in part, as follows:

"* * * the parties having agreed and stipulated that * * * Gerhardt, as mayor and individually, lacks and is without legal authority to suspend * * * McHugh, as court prosecutor of the mayor's court * * * and further that * * * [Gerhardt] lacks authority to call a special meeting of the council without providing notice thereof as set forth in the charter of * * * [Moraine].

"Now, therefore, it is ordered that the temporary restraining order[3] heretofore issued * * * is hereby made permanent and shall continue to be subject to the jurisdiction of this court as a permanent injunction restraining and enjoining * * * [Gerhardt] from those acts complained of and restrained * * *."

That permanent injunction order clearly enjoined all persons in active concert and participation with Gerhardt from (1) interfering with McHugh in the performance of his duties as law director and mayor's court prosecutor and (2) threatening to hold McHugh in contempt for thereafter appearing at mayor's court.

According to the transcript of proceedings before the mayor's court on February 4, 1974, filed herein as part of Gordon's pleadings, councilman Riley was presiding over mayor's court as a substitute for Mayor Gerhardt. A dispute ensued between Lawlis and McHugh as to who would act as prosecutor. McHugh accurately announced to Riley and Lawlis the terms of the permanent injunction order, discussed above. Whereupon, Riley stated to McHugh: "* * * if you keep on with this I will find you in contempt of court," and ordered McHugh to "have a seat out in the audience the same as anybody else."

A further aggravating circumstance is that Barnett knowingly participated in a violation of the city charter. Paragraph 10 of the complaint for writ of quo warranto states:

"Respondent [Barnett] advised relator [Gordon] that

---

[3]The language of the temporary restraining order issued February 16, 1973, which is incorporated into the permanent injunction, reads:

"It is, therefore, ordered that Carl W. Gerhardt as mayor and individually and all persons in active concert and participation with him be and is hereby restrained from taking any action by way of suspension or threat of suspension; from interference verbally or physically with the plaintiff [McHugh] in the performance of his duties as law director and court prosecutor; from making threats or statements in abuse of excess of his authority as mayor directed to plaintiff; and from threatening to or holding plaintiff in contempt for appearing at court on February 19, 1973 and thereafter."

respondent realized the charter had not been followed in terminating relator.''

Paragraph 10 of Barnett's answer states: ''Respondent admits the allegation of paragraph ten (10) of the relator's complaint.'' Moreover, at the outset of the January 2, 1974, council meeting, Barnett was administered the oath of office required by Section 10-10 of Article X of the Moraine charter, which, in part, reads: ''I solemnly swear (or affirm) that I will * * * in all respects, observe the provisions of the charter * * * of the city of Moraine.''

In light of Barnett's admission, the incident in the mayor's court on February 4, 1974, and the actions taken at the January 2, 1974, council meeting with respect to the removal of Gordon and McHugh from the offices of city manager and law director, respectively, we hold that the actions relative thereto were perpetrated in disregard of the Moraine charter, and were possibly in violation of a permanent injunction order issued by the Court of Common Pleas on February 28, 1973.

Therefore, in case No. 74-46, the writ of prohibition is denied, and in case No. 74-74, the writ of quo warranto is allowed, and relator, Gordon, is awarded judgment of ouster.

*Writ denied* in case No. 74-46.
*Writ allowed* in case No. 74-74.

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE and P. BROWN, JJ., concur.