THE STATE, EX REL. CORRIGAN, *v.* NOBLE ET AL.

[Cite as State, ex rel. Corrigan, *v.* Noble (1986), 26 Ohio St. 3d 84.]

(No. 86-111—Decided August 20, 1986.)

*Gold, Rotatori, Schwartz & Gibbons Co., L.P.A.,* and *Niki Z. Schwartz,* for relator.

*Michael R. Gareau,* director of law, for respondents.

*Per Curiam.* The issue at bar is whether we should issue a writ of quo warranto to oust respondent Noble from office and to adjudge relator to be entitled to that office. For the reasons to follow we decline to issue such writ.

It is axiomatic that interpretation of a municipality's charter is the crucial inquiry in determining the propriety of an official's removal from office where the charter addresses such contingency. *State, ex rel. Gerhardt,* v. *Krehbiel* (1974), 38 Ohio St. 2d 90 [67 O.O.2d 92].

The North Olmsted Charter states in Section 5, Article III:

"Duties and Powers of the Mayor.

"(a) * * *

"Except as may otherwise be provided by this Charter or the laws of the State of Ohio governing Civil Service, the Mayor shall have the power to appoint, promote, transfer, reduce or remove any officer or employee of the City except (a), those required by this Charter to be elected, and (b), those whose terms of office may be fixed by this Charter. The Director of Public Safety, the Director of Public Service and all appointed officers may be removed by the Mayor, provided however, that such removal shall not take effect without the concurrence of two-thirds (2/3s) of the members of Council eligible to vote."

A review of this charter provision indicates the mayor may *appoint* as well as remove any officer except (1) classified service employees, (2) elected officers, and (3) those whose terms are fixed by the charter. Further review of the charter, specifically Article V, indicates that the Director of Public Service, whose duties are delineated in Section 5 thereof, has no fixed term of office and is not elected. Moreover, Section 3A2 of Article VI expressly includes directors of departments in the unclassified service.

Relator incorrectly assumes that because no term of office is fixed, a "fixed" term must be implied for an indefinite period. Respondents' view that the Director of Public Service's term automatically terminates with the expiration of office of the appointing mayor is more justifiable than is the relator's assumption because the charter makes *no* mention of the service director's term of office and a newly appointed director can have no expectation of an indefinite term. Furthermore, North Olmsted's past practice in the succession to the office of service director supports respondents' view.

Relator also suggests that a recent effort to amend the charter to eliminate the requirement that removals of department heads would not require the concurrence of city council disposes of respondents' interpretation. This argument is also not persuasive. Clearly, when the *former* mayor made his appointment, he was bound by the charter to obtain the requisite council authority if he desired to remove the service director. However, when the mayor ceased to exercise any further authority upon the expiration of the term of his office, the appointee's right to office also expired.

Additionally, it is impractical to compel the chief executive officer of a city to accept the discretionary appointees of the previous mayor. The charter herein expressly indicates that the mayor "shall supervise the administration of the city's affairs and shall exercise control over all departments and divisions." Section 5(a), Article III.

The mayor's control over subordinates is as much dependent upon the power of appointment as is the threat of removal. Similarly, the mayor must be allowed to appoint individuals he or she can work with effectively, notwithstanding the skill or expertise demonstrated by the individuals appointed under the previous mayor; otherwise, friction and divisiveness may ensue to the detriment of the city, a result clearly in derogation of the charter.

In a quo warranto proceeding, the relator is obligated to show clear legal right to the claimed office. *State, ex rel. Joecken,* v. *Lynch* (1931), 123 Ohio St. 676; *State, ex rel. Cain,* v. *Kay* (1974), 38 Ohio St. 2d 15, 17 [67 O.O.2d 33]. Because the charter provision in issue does not support the view espoused by relator we are compelled to deny the writ.

*Writ denied.*

SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

CELEBREZZE, C.J., dissents.

CELEBREZZE, C.J., dissenting. I dissent for the reason that the majority has ignored the clear unambiguous provisions of the North Olmsted City Charter in order to reach today's result.

In my opinion, relator correctly argues that in the absence of a fixed term of office, his appointment is effective until he is removed. We recently stated in *State, ex rel. Norman,* v. *Viebranz* (1985), 19 Ohio St. 3d 146, 147:

" '* * * The power of appointment, once exercised, is exhausted until a new vacancy occurs. "Where power has been given to appoint to an office and the same has been exercised, any subsequent appointment to the same office will be void unless the prior incumbent has been removed or

the office has otherwise become vacant." ' *State, ex rel. Gahl,* v. *Lutz* (1937), 132 Ohio St. 466, 471 [8 O.O. 413]. * * *"

The majority painstakingly avoids the conclusion that relator was "removed" from office in order to conveniently ignore the explicit provisions of the city charter which require that removals be made with a two-thirds concurrence of city council. Granted, the new mayor would be placed in an awkward situation if she were unable to obtain the approval of council necessary to remove her predecessor's appointees; however, the remedy is not for this court to rewrite the North Olmsted City Charter.

In interpreting city charter provisions, this court has long adhered to the rule that it is not our duty to consider the wisdom or feasibility of the provision under consideration. In *State, ex rel. Hackley,* v. *Edmonds* (1948), 150 Ohio St. 203, 217 [37 O.O. 474], we held:

"* * * But if Section 3 and Section 7 of Article XVIII of the Ohio Constitution are to have any meaning, and are not to be completely emasculated and eviscerated, we are constrained to hold that in matters of purely local concern the municipality has the right, in adopting its charter, to make provisions that may be silly and unwise. If they prove to be so, the remedy is in the hands of the people who have adopted the charter. A majority of them has the power to amend it."

Until such time as the charter is amended, the well-established law of this state requires that the removal of municipal officers be made in accordance with the dictates of the city charter. *State, ex rel. Gerhardt,* v. *Krehbiel* (1974), 38 Ohio St. 2d 90 [67 O.O.2d 92].