THE STATE EX REL. CALVARUSO ET AL. *v.* BROWN ET AL.

[Cite as *Calvaruso v. Brown,* 138 Ohio St.3d 503, 2014-Ohio-1018.]

*Quo warranto to oust from positions as acting chief of police and de facto deputy chief—Writ denied.*

(No. 2013-0280—Submitted November 19, 2013—Decided March 19, 2014.)

IN QUO WARRANTO.

————————————

**Per Curiam.**

{¶ 1} In this quo warranto case, relators are six of the nine Akron Police Department captains, who claim that they are each qualified to hold the positions of deputy police chief and acting police chief. They seek to oust Charles Brown, an assistant to the mayor of Akron, from the positions of de facto deputy chief and acting chief of police.

{¶ 2} We granted the city of Akron's motion to intervene and issued an alternative writ establishing a briefing schedule. All parties have submitted evidence and briefs, and all have moved for oral argument in the case.

{¶ 3} We deny relators' request for a writ of quo warranto.

{¶ 4} Brown cannot be ousted from the office of acting chief of police, because there is no such office within the police command. Rather, "acting chief of police" is a temporary assignment by the chief of police to administer the division of police during his short absence, and we hold that quo warranto does not lie to remove someone from a temporary assignment. In addition, because Brown does not hold the office of deputy chief and does not claim to be a deputy chief, he is not a de facto deputy chief for purposes of a quo warranto action. Because he is not a de facto deputy chief, he cannot be ousted from that office.

**{¶ 5}** Brown's job description and other facts indicate that as an assistant to the mayor, he is performing, or has performed, at least some of the duties of a deputy chief. However, the captains do not ask for his ouster as assistant to the mayor, and we may not determine in an action for quo warranto what duties he may perform in that capacity. We therefore deny the writ.

*Facts*

*The division of police and the mayor's office*

**{¶ 6}** Section 68 of the Charter of the City of Akron establishes a Division of Police. The Akron police force "shall consist of a Chief of Police and such officers and employees as may be provided for by the Council." *Id*. The chief of police "shall be in immediate charge of" the division of police and "shall have control over the stationing and transfer of all patrolmen and other employees constituting the Division of Police, under such rules and regulations as the Mayor may prescribe." *Id*.

**{¶ 7}** The charter also vests the mayor with broad powers to hire employees and supervise the division of police. Section 54 of the charter grants the mayor power to "appoint and remove all employees in both the classified and unclassified service, except elected officials," and to exercise control over all city departments and divisions. The charter does not limit who may be hired as an assistant to the mayor or restrict the duties the mayor may assign to such an assistant. Assistants to the mayor currently perform a wide range of duties, including managing the safety communications center, which is staffed by sworn fire and police personnel and civilian employees and provides dispatch service for the police and fire departments. Assistants to the mayor have also been the city's director of communications, chief information officer, chief technology officer, and assistant for community relations.

**{¶ 8}** The city charter divides the civil service into classified and unclassified positions. Unclassified positions include elected officers and various

2

directors and deputy directors of departments but not the chief of police. Classified positions are all positions not specified as unclassified.

{¶ 9} Akron City Ordinance 409-2012 created and organized the departments in the classified service of the city. The ranked positions within the division of police are police chief, police deputy chief, police captain, police lieutenant, police sergeant, and police officer. All other positions within the division are unranked civilian positions.

*Duties of the police captains and respondent Brown*

{¶ 10} The deputy-chief position is to be filled by appointment following competitive testing. There are no deputy chiefs currently in the division of police. The police division's manual of rules and regulations states that deputy chiefs "can assume the duties of the Chief of Police if assigned to do so during the absence of the Chief of Police." From time to time, the current chief of police, James D. Nice, has designated a captain as acting chief of police in his absence.

{¶ 11} In the absence of deputy chiefs, the captains have taken on other duties normally performed by deputy chiefs, such as supervision of various subdivisions of the division of police.

{¶ 12} In January 2013, Brown resigned as a police lieutenant, a civil-service position below the rank of captain, and was immediately appointed by the mayor to an unclassified position as one of several assistants to the mayor. Brown also serves as a reserve police officer: a "trained civilian volunteer." The mayor and the police chief designated Brown the assistant chief of police even though no such position officially exists in either the classified or unclassified service.

{¶ 13} In February 2013, the police chief, instead of appointing a captain as he had done in the past, appointed Brown as acting chief of police for four days. Since the captains filed this action, the chief has not appointed anyone as

acting chief of police when he has been absent, but instead has ordered that any issues that arose during his absence be directed to the mayor.

{¶ 14} The police division maintains a seniority list of all supervisory sworn police officers in the classified service known as the "S-list." The S-list assigns all sworn officers an S-number that identifies an officer's rank within the chain of command. On January 17, 2013, the division issued an S-list with Brown's name on it, even though he is an unclassified civilian employee in the mayor's office. This S-list placed Brown second in the chain of command of the police division. He was listed as an "S-2," a listing normally reserved for a deputy chief. On January 18, 2013, the attorney for the local police union sent a letter to the city objecting to Brown's placement on the S-list, and on January 22, the city issued a revised S-list that did not include Brown's name.

{¶ 15} Even though his name no longer appears on the S-list, the captains allege that Brown works in the police division and has assumed the authority of a ranking police officer below the rank of chief but above the rank of captain. The captains allege that Brown continues to oversee the Office of Community Relations, an office that he oversaw before he resigned as a lieutenant, and that he has issued orders to lower ranking officers even though he is supposedly no longer within the chain of command.

{¶ 16} Brown has also allegedly interrupted the chain of command by using police-department resources without providing notification. For example, in June 2013, the police department partnered with the Akron Public Schools to hold a fake flash mob to challenge the community about violence and bullying. After reviewing a news article about this event, Captain Calvaruso learned that several officers under his command were involved in the event without his knowledge.

{¶ 17} Brown also allegedly took part in activities traditionally performed by deputy chiefs or, in the absence of deputy chiefs, by captains. For example,

4

the police division's manual requires subdivision commanders to serve as members of the Firearms Review Board. However, Brown regularly signed findings and recommendations of the board. Brown also regularly approved overtime requests in place of the police chief.

{¶ 18} Despite currently being a reserve officer, Brown applied for and was awarded positions allegedly reserved for active officers. For example, under the secondary police-employment program, reserve officers are allegedly not eligible for secondary employment as a contact officer or supervisor. Nevertheless, Brown applied for such employment, using his active-duty identification number rather than his reserve number. Despite the prohibitions, the police chief approved Brown's application.

{¶ 19} Brown was also allegedly involved in command-level activities even though he is only a reserve officer. For example, he sat in on meetings with the police chief and the internal-affairs department, even though the captains were apparently not included in those meetings. Brown also attended an FBI conference limited to command-level law-enforcement personnel.

{¶ 20} Respondents assert that Brown does not directly manage or supervise any employees, including the police captains, and does not direct all the activities of any subdivision of the police department, develop the budget, or administer the police division's rules. Rather, he communicated with the media, administered the safe-neighborhood initiative, and participated in community outreach. He did not sign any document as a deputy chief or as a commander of a subdivision.

{¶ 21} The captains claim that they possess the necessary qualifications for the position of acting police chief while Brown does not. The captains assert that an assistant to the mayor is not part of the classified or unclassified service of the Akron Police Department, but that Brown was nevertheless assigned to serve as acting police chief in February 2013. The captains also claim that they are

entitled to be considered for the position of acting police chief and that they are able to fulfill the duties of deputy chief.

**{¶ 22}** The captains pray for a writ of quo warranto ousting Brown from the position of acting chief of police and for a writ ousting Brown as a de facto deputy chief of police. They further pray for orders declaring that an assistant to the mayor may not assume the duties of a sworn police officer and declaring that they are entitled to be considered for the position of acting chief of police. Finally, they pray for an order declaring that they are entitled to fulfill the duties of deputy chief and ask for attorney fees and costs.

*Analysis*

*Oral argument is unnecessary to decide this case*

**{¶ 23}** Relators and respondents have moved for oral argument in this case, contending only that the issues are novel and that oral argument would allow the parties to address any of the court's concerns.

**{¶ 24}** "Oral argument is not required in an original action in this court; instead, oral argument is discretionary in these cases." *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 114 Ohio St.3d 183, 2007-Ohio-3831, 870 N.E.2d 1174, ¶ 42. "Nevertheless, we have discretion to grant oral argument pursuant to S.Ct.Prac.R. IX(2)(A) [now S.Ct.Prac.R. 17.02(A)], and in exercising this discretion, we consider whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among courts of appeals." *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 15.

**{¶ 25}** However, the parties' briefs and evidence in this case are sufficient to resolve the issues that have been raised. *See State ex rel. Allen v. Warren Cty. Bd. of Elections*, 115 Ohio St.3d 186, 2007-Ohio-4752, 874 N.E.2d 507, ¶ 21. Therefore, we deny the motions for oral argument and proceed to the merits.

*Quo warranto*

**{¶ 26}** Quo warranto is the exclusive remedy to litigate the right of a person to hold a public office. *State ex rel. Deiter v. McGuire*, 119 Ohio St.3d 384, 2008-Ohio-4536, 894 N.E.2d 680, ¶ 20; *State ex rel. Ebbing v. Ricketts*, 133 Ohio St.3d 339, 2012-Ohio-4699, 978 N.E.2d 188, ¶ 8, citing *State ex rel. Johnson v. Richardson*, 131 Ohio St.3d 120, 2012-Ohio-57, 961 N.E.2d 187, ¶ 15. Moreover, " '[t]o be entitled to the writ of quo warranto, the relator must establish that the office is being unlawfully held and exercised by respondent and that relator is entitled to the office.' " *Ebbing,* quoting *State ex rel. Zeigler v. Zumbar*, 129 Ohio St.3d 240, 2011-Ohio-2939, 951 N.E.2d 405, ¶ 23.

**{¶ 27}** Here, relators assert two related claims: (1) Brown holds (or has held) the office of acting chief of police and (2) Brown is a de facto deputy chief. We address each claim.

*Brown cannot be ousted as acting chief of police, because that position is a temporary assignment, not an "office"*

**{¶ 28}** "Acting chief of police," under the evidence presented here, is a temporary assignment filled only when the chief is briefly absent. The police division's manual allows a deputy chief to assume some of the duties of the police chief when the chief is absent. Brown was given that assignment only once, and the police chief appears to have stopped assigning anyone to that position during his absences.

**{¶ 29}** "Acting chief of police" is not a public office to which anyone has a right or from which anyone may be ousted in quo warranto. "The legality of the exercise of a mere function alleged to be erroneously exercised by one who, it is claimed, is a public officer cannot be inquired into by a proceeding in quo warranto." *State ex rel. Hogan v. Hunt*, 84 Ohio St. 143, 95 N.E. 666 (1911), paragraph two of the syllabus.

**{¶ 30}** This is not to say that a person cannot be subject to a quo warranto action to be ousted from an office he holds on a temporary or interim basis. *See, e.g.*, *State ex rel. Buian v. Kadlec*, 53 Ohio St.2d 239, 240, 373 N.E.2d 1260 (1978); *State ex rel. Buian v. Kadlec*, 56 Ohio St.2d 116, 117, 383 N.E.2d 119 (1978) (quo warranto against interim personnel director). But "acting chief of police" is not an official appointment to an office for the remainder of the term or until the next election. It is an assignment to act in the chief's stead while he is away from the office for a few days.

**{¶ 31}** Brown cannot be ousted as "acting chief of police," because "acting chief of police" is not a public office.

*Brown is not a de facto deputy chief of police*

**{¶ 32}** Relators do not seek to oust Brown from his actual position as an assistant to the mayor. Rather, they seek to oust him from what they allege is his de facto position as a deputy chief.

**{¶ 33}** However, the case law on ousting a de facto officer in a quo warranto action does not apply here. "A de facto officer is one who enters upon and performs the duties of his office with the acquiescence of the people and the public authorities and has the reputation of being the officer he assumes to be and is dealt with as such." *State v. Staten*, 25 Ohio St.2d 107, 267 N.E.2d 122 (1971), paragraph three of the syllabus, *vacated in part on other grounds, sub nom. Staten v. Ohio,* 408 U.S. 938, 92 S.Ct. 2869, 33 L.Ed.2d 759 (1972); *State ex rel. Huron Cty. Prosecutor v. Westerhold*, 72 Ohio St.3d 392, 396, 650 N.E.2d 463 (1995). In other words, to be a de facto officer, the person must appear to be in an office that the person is not entitled to hold, and the person must appear to discharge the duties and responsibilities of that office.

**{¶ 34}** Brown does not claim to be a deputy chief. The captains acknowledge as much. Rather, they object to his performing some of the duties that a deputy chief would typically perform.

**{¶ 35}** We agree that Brown does appear to be performing some duties usually performed by a deputy chief. The captains provide evidence that he is, among other things, sitting on the Firearms Review Board and signing findings and recommendations of that board, overseeing the Office of Community Relations and issuing orders to a sergeant, representing the chief at various public and private meetings and events, and assisting the chief in the supervision and direction of all Police Department functions. All of these activities fit within the job description of a deputy chief. Moreover, Brown has applied for and received secondary employment assignments, using his active-duty identification number rather than his reserve number, even though reserve officers are allegedly not eligible to do so.

**{¶ 36}** In addition, Brown assumes the title of "assistant chief of police," a position that does not exist in either the police division manual or the city charter. Nonetheless, there was at one time a job description for "Assistant Chief of Police," apparently used to determine whether Brown could continue in the police and fire pension fund once he became an assistant to the mayor. Despite the fact that the position does not officially exist, Brown's formal title is apparently "assistant chief of police," and local media refer to him by that title.

**{¶ 37}** But these facts alone do not entitle the captains to a writ.

**{¶ 38}** "The extraordinary remedy of quo warranto is properly employed to test the actual right to an office or franchise. It can afford no relief for official misconduct, and cannot be employed to test the mere legality of official action by public officers." *State ex rel. Berry v. Tackett*, 60 Ohio St.2d 12, 396 N.E.2d 743 (1979). Thus, to the extent that relators question the legality of Brown's actions as an assistant to the mayor and assistant chief of police because those actions are normally performed only by a deputy chief, quo warranto cannot be used to oust him from his position.

**{¶ 39}** The mayor of Akron has the power to "appoint and remove all employees in both the classified and unclassified service, except elected officials," and to exercise control over all departments and divisions. The mayor has the power to appoint Brown as an assistant to the mayor. If the duties Brown performs in that capacity violate the city's collective-bargaining agreement or state or federal law, relators are free to pursue those theories. But the writ of quo warranto does not lie to oust Brown as assistant to the mayor even if Brown, as an assistant, performs duties that are more akin to the duties usually assigned to deputy chiefs.

*Conclusion*

**{¶ 40}** Because Brown does not hold the office of deputy chief or claim title to that office, quo warranto cannot lie to oust him from the office of deputy chief. Brown is not a de facto deputy chief, even though he may be improperly exercising some of the duties of a deputy chief, because he does not claim that office. And quo warranto cannot oust Brown as an "acting chief of police" because that position is a temporary assignment rather than a public office.

Writ denied.

PFEIFER, O'DONNELL, KENNEDY, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and LANZINGER and FRENCH, JJ., dissent.

_____

**LANZINGER, J., dissenting.**

**{¶ 41}** While I agree that quo warranto cannot be used to oust Brown from an "acting chief of police" position, because that position is a temporary assignment rather than a public office, I respectfully dissent from the majority's holding that Brown is not a "de facto deputy chief" and therefore cannot be ousted through an action in quo warranto. I would grant the writ.

**{¶ 42}** The majority relies on the proposition that quo warranto will not test the legality of a public officer's official action. *State ex rel. Berry v. Tackett*,

60 Ohio St.2d 12, 396 N.E.2d 743 (1979). Yet that is not the situation here. The relators are seeking to oust Brown for unlawfully usurping the duties of a deputy chief. We have held that "[a] *de facto* officer is one who enters upon and performs the duties of his office with the acquiescence of the people and the public authorities and has the reputation of being the officer he assumes to be and is dealt with as such." *State v. Staten*, 25 Ohio St.2d 107, 267 N.E.2d 122 (1971), paragraph three of the syllabus. And R.C. 2733.01(A) provides that a quo warranto action may be brought in the name of the state "[a]gainst a person who *usurps, intrudes into*, or unlawfully holds or exercises a public office * * * within this state." (Emphasis added.) It is not misconduct on the part of Brown that is being alleged but his unlawful intrusion into the office and his performance of the duties of a deputy chief.

{¶ 43} The majority in part justifies denying the writ on the fact that Brown does not claim to be a deputy police chief. Such a claim, however, would not be in his interests. If Brown claimed he held the position, it would be readily apparent that he has usurped, intruded, or unlawfully exercised that public office. Instead, he refers to himself as "assistant chief of police," a position the majority acknowledges does not exist under the city charter.

{¶ 44} In my view, sufficient evidence exists to show that respondents have sidestepped the provision of the city charter that requires the deputy police chief to be a member of the classified civil service. By assigning Brown to perform the functions of a deputy police chief without actually appointing him to that position, respondents have circumvented civil-service requirements, a maneuver we have held to be improper. *Local 330, Akron Firefighters Assn., AFL-CIO v. Romanoski,* 68 Ohio St.3d 596, 629 N.E.2d 1044 (1994).

{¶ 45} Although a writ to remove Brown from the position as assistant to the mayor should not be granted, a writ that removes him from performing the duties of the office of deputy police chief should be granted.

O'CONNOR, C.J., and FRENCH, J., concur in the foregoing opinion.

_____

Muskovitz & Lemmerbrock, L.L.C., Susannah Muskovitz, and William E. Froehlich, for relators.

Cheri B. Cunningham, Akron Director of Law, and Patricia Ambrose-Rubright and Tammy Kalail, Assistant Directors of Law, for respondents.

_____