[Cite as *State ex rel. Madden v. Anderson*, 2024-Ohio-5596.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | |
|---|---|
| STATE OF OHIO, EX RELATIONE: GLENA MADDEN | C.A. No. 30086 |
| Relator | |
| v. | **DECISION AND FINAL JUDGMENT ENTRY** |
| PETER SEXTON AND MUNICIPALITY OF NEW LEBANON | |
| Respondents | |

_____

PER CURIAM:

{¶ 1} Glena Madden ("Madden"), the former municipal manager of the Municipality of New Lebanon ("New Lebanon" or "the village"), seeks a writ of quo warranto to oust Robert L. Anderson, II ("Anderson"), New Lebanon's acting municipal manager.[1] Upon consideration of the evidence submitted and the briefs of the parties, we will deny the writ.

---

[1] Anderson and New Lebanon are the named respondents in the complaint. For the reasons set forth in Section II.C. of this decision, Peter Sexton is substituted as a party for respondent Anderson.

## I. Charter Government in New Lebanon

{¶ 2}   New Lebanon is a village in Montgomery County, Ohio. *See* R.C. 703.01(A) (classifying municipalities with a population of less than 5,000). Although most villages in Ohio are governed by a statutory form of government, New Lebanon has a charter form of government. *See* Ohio Municipal League, *Charter & Statutory Municipalities*, http://www.omlohio.org/DocumentCenter/View/116/Cities-and-Villages-with-Charters-PDF (accessed Nov. 14, 2024).

{¶ 3}   New Lebanon's charter provides that legislative power in the village is vested in a mayor and six council members, the collective body of which constitutes the village council. *See* New Lebanon Charter § 2.01. The mayor is a voting member of the council who presides at all meetings. *Id*. at § 2.04. The council elects a vice mayor from among its members to serve as acting mayor if the mayor is absent from the village or unable to perform his duties. *Id*. at § 2.04, 2.05. The council legislates by resolution or ordinance. *Id*. at § 2.10. The charter provides that: "An affirmative vote of a majority of Council shall be required for the enactment of every ordinance or resolution, unless a larger number be required by the provisions of this Charter." *Id*.

{¶ 4}   New Lebanon's charter also specifies that it has adopted the "Manager Form of Government." *Id*. at § 1.03. The "manager plan" of municipal government is generally found in cities. *See* R.C. 705.51 (referring to "[t]he form of government provided in sections 705.51 to 705.60, inclusive, of the Revised Code" as the "city manager plan"). In cities with a manager plan of government, the council appoints a manager who serves as the administrative head of the municipal government. R.C. 705.51(C); R.C. 705.58.

The manager works under the direction and supervision of the council and holds office at the pleasure of the council. R.C. 705.58.

{¶ 5} So too, in New Lebanon, the village council appoints a "Municipal Manager." New Lebanon Charter § 4.01. The municipal manager is the chief executive and administrative officer of the village. *Id*. at § 4.02. The municipal manager is responsible to the council for the administrative affairs of the village. *Id*. Under the charter, the administrative officers of the village report directly to the municipal manager. *Id*. at § 4.05. For example, the director of finance and records serves as clerk of council and performs their duties under the general direction of the municipal manager. New Lebanon Ordinance 30.01(B)(4). Further, the charter provides that "[n]either Council, nor its committees, shall in any manner take part in the discipline of, nor give orders to, any subordinates and employees in the administrative service of the Municipality responsible to the Manager, but must deal directly with the Manager." Charter § 2.18.

{¶ 6} Having briefly outlined the form of New Lebanon's government, we proceed to the relevant facts of the case.

## II.      Factual Background

{¶ 7} Madden began serving as New Lebanon's municipal manager in February 2019. On October 3, 2023, the village council reappointed Madden as municipal manager. New Lebanon Resolution No. 2023-15 specified that:

> Madden is hereby currently the appointed Municipal Manager of the Municipality of New Lebanon and will continue to be appointed for an additional five year[s] in accordance with terms and conditions of the Employment Agreement negotiated by the Mayor, Council, and Manager and commencing upon signing by the Manger and Mayor.

**{¶ 8}** Notwithstanding the anticipated five-year term of employment, Madden's employment agreement with New Lebanon made clear that she served at the pleasure of the village council. The agreement allowed the council to remove Madden from office before the expiration of her term. However, the agreement required an affirmative vote of five councilmembers to remove Madden from office – a supermajority.

**{¶ 9}** New Lebanon elected new councilmembers in the November 2023 general election, including Mayor David Nickerson. On February 20, 2024, at a public meeting, the village council undertook three legislative actions. First, the council enacted Resolution No. 2024-4 to engage a law firm to conduct an internal investigation into the administrative, financial, and legal affairs of the village. Second, the council enacted Resolution No. 2024-5 placing Madden on administrative leave during that investigation. Third, the council enacted Resolution No. 2024-6 authorizing Mayor Nickerson to:

> engage, negotiate, execute a contract, and subsequently appoint a qualified
>
> candidate as Acting Village Manager to fulfill the duties and responsibilities
>
> of the Village Manager, as set forth in the New Lebanon Charter, during the
>
> pendency of the Village's internal investigation.

Each of the resolutions (collectively referred to as the "February 20 resolutions") was approved by a bare majority of the council – four votes in the affirmative, three in the negative. Mayor Nickerson and Councilmember Nicole Adkins, the vice mayor, voted in the affirmative with respect to each resolution.

**{¶ 10}** Resolutions of the village council must be authenticated by the signature of the mayor and the director of finance and records, i.e., the clerk of council. New Lebanon Charter § 2.14. During the February 20, 2024 meeting, the council placed the clerk on

administrative leave. *See* Resolution No. 2024-5. Because of the clerk's placement on administrative leave or the clerk's unwillingness to perform his duties (it is unclear), Mayor Nickerson appointed Councilmember Adkins as acting clerk at the February 20 meeting. Adkins's signature appears on each of the February 20 resolutions as the "Vice Mayor/Acting Clerk of Council."

**{¶ 11}** After the village council enacted the February 20 resolutions, Mayor Nickerson negotiated and executed a contract with Anderson to provide "independent consulting services" to the village. The contract includes a statement of work which provides that Anderson will perform:

> The ordinary and customary duties and responsibilities of a village manager
> including but not limited to, all duties assigned that are legal and within the
> scope of employment as provided in Article IV of the Charter of the Village
> of New Lebanon, any applicable ordinance, or as determined by the Village
> Council for the efficient management of the Village of New Lebanon.

The contract stated that Nickerson "desire[d] to appoint Robert Anderson to fulfill the duties of the Village Manager during the pendency of the investigation" authorized by Resolution No. 2024-4 and that Anderson "desire[d] to accept appointment to fulfill the duties of the Village Manager during the pendency of the investigation." During this litigation, Anderson has referred to himself as "Acting Village Manager" and as the "chief executive and administrative officer" of the village with "the power to appoint or remove any officers or employees of the Village."

**{¶ 12}** At a public meeting on March 19, 2024, the village council enacted Resolution No. 2024-11 removing Madden from her office as municipal manager. The

same four councilmembers that voted in favor of placing Madden on administrative leave also voted in favor of her removal.

{¶ 13} On March 25, 2024, Madden filed a complaint in this court seeking a writ of quo warranto. Madden seeks reinstatement to the office of municipal manager and the ouster of Anderson.

### III.  Law & Analysis

A.  Basic Principles of Quo Warranto Actions

{¶ 14} "[Q]uo warranto is the exclusive remedy by which one's right to hold a public office may be litigated." *State ex rel. Battin v. Bush*, 40 Ohio St.3d 236, 238-239 (1988), citing *State ex rel. Hogan v. Hunt*, 84 Ohio St. 143 (1911), paragraph one of the syllabus. "The remedy afforded by quo warranto is a judgment of ouster, and a judgment of ouster can be pronounced in no other proceeding." *Ohio Hosp. Assn. v. Community Mut. Ins. Co.*, 31 Ohio St.3d 215, 218 (1987), citing R.C. 2733.20; *Gas-Light Co. v. Zanesville*, 47 Ohio St. 35, 47 (1889).

{¶ 15} R.C. 2733.06 permits a person claiming to be entitled to public office unlawfully held and exercised by another person to bring a quo warranto action. "To be entitled to the writ of quo warranto, the relator must establish that the office is being unlawfully held and exercised by respondent and that relator is entitled to the office." *State ex rel. Zeigler v. Zumbar*, 2011-Ohio-2939, ¶ 23. However, R.C. 2733.08 "recognizes that a relator's proof may fail in regard to one element and yet succeed with respect to the other, and provides that in such instance the court, as representative of the state, shall step in and render whatever decision is required by justice." *State ex rel. Ethell v. Hendricks*, 165 Ohio St. 217, 226 (1956). Therefore, even if the relator cannot show a

clear legal right to the claimed office, this court may nevertheless oust the respondent if the office is being unlawfully held and exercised. *E.g., State ex rel. Myers v. Brown*, 87 Ohio St.3d 545, 547 (2000).

B. Madden's Claim to the Office of Municipal Manager

{¶ 16} There is no dispute among the parties that "Municipal Manager" is a public office. *See Beasley v. E. Cleveland*, 20 Ohio App.3d 370, 373 (8th Dist. 1984) ("For the purpose of quo warranto proceedings, a city manager's position is a public office"), citing *State ex rel. Gerhardt v. Krehbiel*, 38 Ohio St.2d 90 (1974). Accordingly, we proceed to the merits of Madden's claim to the office of municipal manager.

1. Employment Agreement

{¶ 17} Madden argues that she has a clear legal right to the office of municipal manager pursuant to her employment agreement with the village. The agreement specifies that her removal from office requires the affirmative votes of five members of the village council. Thus, Madden asserts that her removal, which garnered the support of just four councilmembers, was unlawful.

{¶ 18} We find Madden's contract-based argument unpersuasive. The Supreme Court of Ohio has rejected quo warranto claims which are "obviously bottomed upon resolution of a contractual law question." *State ex rel. Buian v. Kadlec*, 53 Ohio St.2d 239, 240 (1978). Thus, to the extent that Madden's claim rests on contractual grounds, we find no basis to grant relief in quo warranto. "It is not the obligation of … the Court of Appeals to resolve contractual disputes in the guise of applications for extraordinary writs." *Id*.

2. Resolution No. 2023-15

**{¶ 19}** Having rejected Madden's employment agreement as the source of any quo warranto relief,[2] we also reject her argument that the village council's ratification of the agreement renders her removal unlawful. In other words, we reject Madden's argument that Resolution No. 2023-15 provides the law that governs her removal as municipal manager.

**{¶ 20}** "It is axiomatic that interpretation of a municipality's charter is the crucial inquiry in determining the propriety of an official's removal from office where the charter addresses such contingency." *State ex rel. Corrigan v. Noble*, 26 Ohio St.3d 84, 85 (1986), citing *State ex rel. Gerhardt v. Krehbiel*, 38 Ohio St.2d 90 (1974). Moreover, "where a municipal charter prescribes the manner for removal of municipal officers, any attempt by the municipality's legislative body to remove an officer in a manner at variance or in conflict with the charter's directives is a nullity." *Krehbiel* at 94.

**{¶ 21}** Here, New Lebanon's charter has no express provision speaking to the removal of a municipal manager. Nevertheless, there does not seem to be a dispute that the village council has the power to remove a municipal manager. Madden has not argued to the contrary. Further, New Lebanon's charter states that a municipal manager "shall be responsible to the Council for the proper administration of the affairs of the Municipality." New Lebanon Charter § 4.02. Thus, we reasonably construe the charter to give the council an implied power of removal, the exercise of which must be consistent with the

---

[2] We do not decide whether Madden may have any other legal remedies, e.g., a breach of contract claim, against the village.

other provisions of the charter, the village's ordinances, or (failing that) the general laws of the State of Ohio.

**{¶ 22}** If the village council may remove a municipal manager, then the question becomes one of legislative procedure. New Lebanon's charter specifies that all legislation, i.e., each ordinance or resolution, requires an affirmative vote of the majority unless another provision of the charter controls. *Id*. at § 2.10. In contrast, the resolution ratifying Madden's employment agreement requires that any future legislation to remove her from office must garner five affirmative votes. Thus, Resolution No. 2023-15 limits the power of a future council to remove Madden using the standard legislative procedure provided for in the charter.

**{¶ 23}** We find that Resolution No. 2023-15 is unlawful in this single respect.[3] Mere legislation, such as a resolution, cannot supersede the provisions of a municipal charter. *See State ex rel. Craft v. Schisler*, 40 Ohio St.3d 149, 151 (1988) (recognizing that in a conflict between municipal administrative rules, ordinances, and resolutions and a charter, the charter is "the superior authority"), citing *State ex rel. Elchlinger v. Ramser*, 113 Ohio App. 289 (1961); *Reed v. Youngstown*, 173 Ohio St. 265 (1962); *State ex rel. Bloomingdale v. Fairborn*, 2 Ohio St.3d 142 (1983). No provision of New Lebanon's charter indicates that removal of a municipal manager requires the approval of a supermajority of the village council. Thus, only a simple majority is required under the charter for the council to remove a municipal manager from office. Accordingly, we reject Madden's argument that her removal was unlawful because it was not accomplished by the affirmative vote of five councilmembers.

---

[3] We do not decide whether the resolution is unlawful in any other respect.

3. Resolution No. 2024-11

**{¶ 24}** Madden's remaining arguments in support of her entitlement to the office of municipal manager assume (as we have concluded) that a simple majority of the village council may remove a municipal manager under the charter. However, Madden maintains that Councilmember Adkins's affirmative vote in favor of Resolution No. 2024-11 should not count towards the majority approving that resolution.

**{¶ 25}** Madden argues that Adkins forfeited her office as a councilmember when Mayor Nickerson appointed her as acting clerk of council on February 20, 2024. New Lebanon's charter prohibits an elected official, such as a councilmember, from working for the village as an "employee" and prohibits elected officials from holding "any incompatible office." New Lebanon Charter § 8.01. Madden argues that, upon accepting an appointment as acting clerk of council, Adkins became an employee of the village or, in the alternative, that the office of clerk of council is incompatible with the office of councilmember. Further, Madden claims that, under either scenario, the appointment results in a self-executing forfeiture of office. *Id.* at § 7.03 ("If an elected officer shall cease to possess any of the qualifications for such office, they shall forthwith forfeit his office"). Thus, Madden maintains that just three councilmembers voted to remove her from office on March 19, 2024, not the required four.[4]

**{¶ 26}** Madden's arguments require us to determine that Adkins has forfeited an office to which the people of New Lebanon have elected her. This we cannot do.

**{¶ 27}** As the Supreme Court of Ohio has explained:

---

[4] Madden also alleges that Adkins's oath of office did not conform to the charter and provides another basis for disqualification.

The right of a *de facto* officer to hold office may not be questioned in a collateral proceeding to which he is not a party. *Stiess v. State* (1921), 103 Ohio St. 33, 132 N.E. 85. Consequently, until a *de facto* officer is properly challenged in a *quo warranto* proceeding and thereby removed from office, his actions are as valid as those of a *de jure* officer. *Ex Parte Strang* (1871), 21 Ohio St. 610.

*State v. Staten*, 25 Ohio St.2d 107, 110 (1971), *vacated in part on other grounds sub nom*. *Staten v. Ohio*, 408 U.S. 938 (1972).

{¶ 28} Councilmember Adkins, as an elected member of New Lebanon's village council, is not less than a *de facto* officer. "A *de facto* officer is one who enters upon and performs the duties of his office with the acquiescence of the people and the public authorities and has the reputation of being the officer he assumes to be and is dealt with as such." *Id*., citing *State ex rel. Witten v. Ferguson*, 148 Ohio St. 702 (1947). Further, Adkins is not a party to this case. Further still, Madden lacks standing to oust Adkins from office, having no good faith or reasonable basis for laying claim to the council seat herself. *See, e.g., State ex rel. Reynolds v. Nix,* 2024-Ohio-4469, ¶ 10 (standing in quo warranto requires the relator to have a claim to the incumbent's office made "in good faith and upon reasonable grounds"). Thus, we cannot say that Adkins's legislative actions in this case were unlawful. Accordingly, we conclude Madden was lawfully removed from the office of municipal manager on March 19, 2024, by an affirmative vote of four members of the village council in accordance with New Lebanon Charter § 2.10. Madden has no clear legal right to hold the office of municipal manager.

## C. Madden's Claim that Anderson Should be Ousted

**{¶ 29}** Madden's failure to establish her entitlement to the office of municipal manager does not preclude a writ of quo warranto. *State ex rel. Myers v. Brown*, 87 Ohio St.3d 545, 547 (2000). The evidence in this action establishes conclusively that Anderson has held the office of municipal manager on acting or interim basis since February 20, 2024. The temporary nature of Anderson's appointment does not preclude quo warranto relief. *See State ex rel. Calvaruso v. Brown*, 2014-Ohio-1018, ¶ 30 ("This is not to say that a person cannot be subject to a quo warranto action to be ousted from an office he holds on a temporary or interim basis"), citing *State ex rel. Buian v. Kadlec*, 53 Ohio St.2d 239 (1978); *State ex rel. Buian v. Kadlec*, 56 Ohio St.2d 116, 117 (1978). De facto officers may be removed in quo warranto actions. *Calvaruso* at ¶ 33; *see also* R.C. 2733.01(A) (permitting quo warranto actions to be brought against a person who "usurps" or "intrudes into" a public office). Thus, if Madden establishes that Anderson unlawfully holds the office, she is entitled to oust him.

**{¶ 30}** Our discussion of Madden's arguments regarding the unlawfulness of Anderson's appointment begins with a recognition that the facts have changed since Madden filed her complaint. During the briefing process, the respondents informed this court that, while this action was pending, New Lebanon's village council appointed Peter Sexton to the office of municipal manager. Indeed, on October 15, 2024, the council enacted Resolution No. 2024-21 approving an employment contract with Sexton. The respondents also indicated that Anderson's consulting contract would terminate on November 22, 2024, thus ending his status as the village's de facto municipal manager.

The respondents assert that these developments render Madden's quo warranto claim moot.

**{¶ 31}** Madden does not dispute that the village council has appointed Sexton to the office of municipal manager. However, she denies that the matter is moot. To the contrary, Madden asserts that her legal arguments for ousting "Anderson or any successor" from office "remain valid."

**{¶ 32}** The basic principles of the mootness doctrine are well-known:

"The role of courts is to decide adversarial legal cases and to issue judgments that can be carried into effect." *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-Ohio-24, 97 N.E.3d 487, ¶ 9, citing *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970); *State v. Smith,* 2d Dist. Montgomery No. 27981, 2019-Ohio-3592, ¶ 8. Under the mootness doctrine, American courts will not decide cases where an actual legal controversy no longer exists between the parties. *Id.,* citing *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 37. "Issues are moot when they lack practical significance and, instead, present academic or hypothetical questions." *Dibert v. Carpenter*, 2018-Ohio-1054, 98 N.E.3d 350, ¶ 30 (2d Dist.), citing *State ex rel. Ford v. Ruehlman*, 149 Ohio St.3d 34, 2016-Ohio-3529, 73 N.E.3d 396, ¶ 55.

*In re N.Q.*, 2024-Ohio-1296, ¶ 8 (2d Dist.).

**{¶ 33}** We determine that this action is not moot. Because Anderson is no longer – as of November 22, 2024 – New Lebanon's de facto municipal manager, we agree that he cannot be removed from office. Nevertheless, in our view, Madden may still obtain a

judgment of ouster if she can demonstrate that Anderson's successor holds the office unlawfully. Given that Anderson has ceased to hold office, we formally substitute Sexton for Anderson as a respondent. *See* Civ.R. 25(D)(1) ("When a public officer is a party to an action in the public officer's official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the public officer's successor is automatically substituted as a party").

{¶ 34} Although Madden was aware of Sexton's appointment to the office of municipal manager and had the opportunity to make arguments about the lawfulness of his appointment during the briefing process, she did not. Madden has made no claim that the village council's appointment of Sexton violates New Lebanon's charter. Thus, the evidence and the briefing in this action have not advanced beyond Madden's own claim to the office (which lacks merit) and the unique procedural problems she has raised with respect to Mayor Nickerson's appointment of Anderson (which are irrelevant to the lawfulness of Sexton's appointment). Therefore, in the absence of any evidence or argument that Sexton (the current incumbent) unlawfully holds the position of municipal manager, we conclude that Madden cannot oust him.

### III. Conclusion

{¶ 35} For all the foregoing reasons, relator Glena Madden has no clear legal right to the office of municipal manager of the Municipality of New Lebanon and is not entitled to a judgment of ouster against the incumbent. Writ DENIED.

{¶ 36} Judgment in favor of the respondents Peter Sexton and the Municipality of New Lebanon.

{¶ 37} Madden's November 1, 2024 motion for oral argument is OVERRULED.

**{¶ 38}** Madden shall be responsible for the costs of this action.

SO ORDERED.


_____

CHRISTOPHER B. EPLEY, PRESIDING JUDGE


_____

JEFFREY M. WELBAUM, JUDGE


_____

RONALD C. LEWIS, JUDGE



To The Clerk: Within three (3) days of entering this judgment on the journal, you are directed to serve on all parties not in default for failure to appear notice of the judgment and the date of its entry upon the journal, pursuant to Civ.R. 58(B).


_____

CHRISTOPHER B. EPLEY, PRESIDING JUDGE